**Thomas L. JENKINS, Appellant,**

v.

**UNITED GAS CORPORATION and Allan B. Caldwell, Appellees.**

No. 24555.

United States Court of Appeals Fifth Circuit.

Aug. 29, 1968.

Rehearing Denied Sept. 25, 1968.

Elmo R. Willard, III, Beaumont, Tex., Leroy D. Clark, Jack Greenberg, James M. Nabrit, III, Robert Belton, Thomas E. Woodhouse, Albert J. Rosenthal, New York City, for appellant.

Quentin Keith, Keith, Mehaffy & Weber, Beaumont, Tex., for appellees.

Before JOHN R. BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case is another of those now frequently coming to us [1] under Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e et seq., forbidding discrimination in employment by reason of race, color, religion, sex, or national origin. At issue is the question whether the of-

1. Overnite Transportation Co. v. Equal Employment Opportunity Commission, 5 Cir., 1968, 397 F.2d 368 [No. 25521, July 5, 1968]; Oatis v. Crown Zellerbach Corp., 5 Cir., 1968, 398 F.2d 496 [No. 25307, July 16, 1968].

Pending but yet undetermined before another panel are: No. 24789, Hyler v. Reynolds Metal Co.; No. 24810, Dent & Equal Employment Opportunity Comm. v. St. Louis-San Francisco Ry.; No. 24811, Muldrow v. H. K. Porter Co.; No. 24812, Pearson v. Alabama By-Products Corp.; No. 24813, Pettway & Equal Employment Opportunity Comm. v. American Cast Iron Pipe Co.

fer and acceptance of a promotion, subsequent to the filing of a class action alleging systematic racial discrimination renders the suit moot as to the employee individually or to the class he represents. We hold that the action is not moot on either score and therefore reverse and remand for a full hearing.

The problem arises from the unique structure of Title VII which limits access to the courts by conditioning the filing of suit upon a previous administrative charge with the EEOC [2] whose function is to effectuate the Act's policy of voluntary conference, persuasion and conciliation as the principal tools of enforcement. The key to the courthouse door being the administrative charge, the door slams shut, the employer argued successfully below, when the specific job assignment claimed to have been denied the employee because of the employer's racial discrimination was offered to and accepted by the employee.

The Employee, Jenkins, is a Negro and was working for the Employer, United Gas Corporation, as a "serviceman's helper" at the time this action was commenced. In May 1965 Employee applied for promotion to the position of "serviceman." When an opening occurred in August 1965 it was filled by a white employee who was not, so Employee alleges, qualified according to Employer's own job specifications. Employee filed a charge with EEOC on November 4, 1965, complaining that he was refused the promotion because of his race. The investigation by EEOC substantiated the charge.[3]

But in keeping with the Act's short timetable EEOC gave notice (§ 706(e); 42 U.S.C.A. § 2000e–5(e)) that due to heavy workload, efforts at conciliation had not been undertaken and Employee was notified of his right (§ 706(e), (f); 42 U.S.C.A. § 2000e–5(e), (f)) to file suit in Federal District Court.

2. Equal Employment Opportunity Commission.

3. We need not decide at this juncture what type charge must be filed or what the charge must specifically allege. Here, EEOC found the charge adequate. Section 706(a) of the Act (42 U.S.C.A. § 2000e–5(a)) provides:

"Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall * * * make an investigation of such charge."

The legislative history is silent on the requisites of the charge. This is not unusual since the charge is the catalyst which starts the *informal* conciliation proceedings of EEOC. It is in keeping with the purposes of the Act to keep the procedures for initiating action simple. It was anticipated that the charge would be filed by a "person claiming to be aggrieved." It is not until conciliation efforts have failed and suit is to be filed that the court is authorized to appoint an attorney to prosecute the action (§ 706(e), 42 U.S.C.A. § 2000e–5(e)). For a lay-initiated proceeding it would be out of keeping with the Act to import common-law pleading niceties to this "charge," or in turn to hog-tie the subsequent lawsuit to any such concepts. All that is required is that it give sufficient information to enable EEOC to see what the grievance is about. See United States v. Mayton, 5 Cir., 1964, 335 F.2d 153, 160–61.

See decision of Feb. 17, 1966 annexed to Employee's complaint below:

"*SUMMARY OF CHARGE*

The Charging Party alleges discrimination based on race (Negro) in that Caucasians have been transferred into the Service Department and promoted to Servicemen, while he and other Negroes remained Helpers, although qualified to be Servicemen.

*SUMMARY OF INVESTIGATION*

The investigation substantiates the Charging Party's allegation:

[Here follows factual detail]

*DECISION*

Reasonable cause exists to believe that the charge is true in that Respondent is discriminatorily refusing to promote the Charging Party and other qualified Negroes to the position of Serviceman."

Employee, within the 30 days allowed, filed a class action alleging systematic racial discrimination which, tested against the applicable standard [4] of how a complaint is to be read under F.R.Civ.P. 12(b) (6), was a model of specificity in plant-wide, system-wide racial discrimination which took its toll of Employee and his group principally in denial of promotion to the position of Serviceman.[5] The prayer was equally specific and broad, seeking an injunction on behalf of Employee and his class, not only as to promotion to Servicemen but generally prohibiting Employer "from continuing or maintaining the policy, practice, custom and usage of denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of plaintiff and others similarly situated to enjoy equal employment opportunity as secured by Title VII of the Act * * * without discrimination on the basis of race or color." It then ended with a prayer for back pay differential, and as a valuable unique adjunct of the Act (§ 706(k); 42 U.S. C.A. § 2000e–5(k)) the allowance of attorney's fees.

But within a few weeks Employer offered the coveted promotion to Serviceman, which Employee accepted one week later. Shortly, Employer moved to dismiss the action as moot since Employee was tendered and accepted promotion to Serviceman. Although the moving papers warranted the Judge to conclude that there was no dispute about the offer and acceptance of this individual promotion, the court without more—and without ever making any factual inquiry [6] into the broad charges affecting others system-wide—entered an outright judgment of dismissal.[7]

Neither on the score of the action in Employee's own right or his representation of those in his class will this outcome jell. Like considerations bear on each claim and they start with the unusual structure of Title VII. Of course

4. See, Barber v. Motor Vessel "Blue Cat", 5 Cir., 1967, 372 F.2d 626, 627–28, 1967 A.M.C. 2337; Conley v. Gibson, 1957, 355 U.S. 41, 45–48, 78 S.Ct. 99, 2 L.Ed.2d 80, 86–88.

5. The complaint alleged:
  "And plaintiff says that the defendants, and each of them, are denying him equality of opportunity in employment because of his race, in violation of Title VII of the Civil Rights Act of 1964 * * *.
  B. Plaintiff further alleges, * * * that no Negroes are employed as Servicemen at any of the plants, offices or service centers under the direct supervision and control of the defendant corporation, even though there are Negroes other than plaintiff who are qualified to hold such positions. And, in the alternative, plaintiff alleges that if there are other Negroes employed in such capacity by the defendant corporation, that such employment is on a token basis only; and plaintiff alleges that the defendant corporation is wilfully and intentionally denying to him, and other Negro employees similarly situated, equal employment opportunity in violation of Title VII of the Civil Rights Act of 1964.
  C. Plaintiff was refused the promotion to Serviceman, * * * on the basis of his race and color pursuant to the defendant corporation's long standing and well-known practice, custom, and usage of refusing to promote Negroes to such positions because of their racial origin and classification. Pursuant to this policy practice, custom and usage, Negroes other than plaintiff have been denied promotion to such positions on the basis of race and color."

6. In fact, he excused Employer from answering interrogatories and refused to grant other motions of the Employee in his pre-trial effort to ascertain the facts.

7. Although the memorandum opinion referred to in the formal judgment spoke in terms of mootness, the judgment has all the earmarks of a binding adverse determination on the merits. It reads:
  "ORDERED, ADJUDGED, and DECREED by the Court that the above entitled and numbered cause be and the same is hereby dismissed at the cost of the Plaintiff."
  Ironically, Employer on the ground that it was an F.R.Civ.P. 23(b) (2) claim, not a 23(b) (3) type, might even assert it as res judicata as to all members of the class. See F.R.Civ.P. 23(c) (3).

the legislative compromise changed the concept from an enforcing-adjudicatory administrative agency to one in which the agency would conciliate, leaving the ultimate, final sanction to be judicial enforcement. As a part of the scheme such judicial enforcement was to be initiated by and at the hands of individual working grievants.[8]

■ Although there are restrictions both in time and pre-conditions for court action this does not minimize the role of ostensibly private litigation in effectuating the congressional policies. To the contrary, this magnifies its importance while at the same time utilizing the powerful catalyst of conciliation through EEOC. The suit is therefore more than a private claim by the employee seeking the particular job which is at the bottom

of the charge of unlawful discrimination filed with EEOC. When conciliation has failed—either outright or by reason of the expiration of the statutory timetable—that individual, often obscure, takes on the mantel of the sovereign. Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L. Ed.2d 1263; Oatis v. Crown Zellerbach, supra. And the charge itself is something more than the single claim that a particular job has been denied him. Rather it is necessarily a dual one: (1) a specific job, promotion, etc. has actually been denied, and (2) this was due to Title VII forbidden discrimination.

■ Considering that in this immediate field of labor relations what is small in principal is often large in principle,[9] element (2) has extreme impor-

8. For an excellent, well organized compilation of materials with helpful commentary that portrays legislative history in its technical sense and equally in the historian's broader view of men, times, places and action, see BNA, The Civil Rights Act of 1964 (1964). The significant differences between the House Bill and that of the Senate (which was enacted) are set out, appendix C–1 at 289, 292–95, Dirksen explanation; C–2 at 297, 300–04, Humphrey explanation; and C–3 at 305, 311–16, comparative analysis by Congressman McCulloch. The commentary traces the largely unsuccessful efforts to eliminate such discrimination through Presidential Commissions and Executive Orders, the long legislative efforts over the years (at 9–22), and in chapter 6 discusses the evolvement of the Act's provisions for administration and enforcement (at 41–56) and summarizes those pertinent here along these lines. Section 706 (42 U.S.C.A. § 2000e–5) provides that within 90 days of occurrence a written charge may be filed with EEOC either by a person claiming to be aggrieved, or by a member of EEOC who has reasonable cause to believe that an employer has engaged in an unlawful employment practice. EEOC then notifies the employer of the charge and conducts an investigation. Under §§ 709(a), 710(a), (42 U.S.C.A. §§ 2000e–8(a), 2000e–9(a)) EEOC in the investigation of such charges has the power to examine witnesses under oath and to require the production of evidence. If EEOC determines that there is reasonable cause to

believe that the charge is true, it is then authorized to attempt to eliminate the practice by informal conference, conciliation, and persuasion. If EEOC is unable to secure voluntary compliance it then notifies the person aggrieved and a civil action may then be filed by the person claiming to be aggrieved, or if the charge was brought by a member of EEOC then by any person whom that charge alleges was aggrieved. In the employee's suit the court may appoint an attorney for the complainant and may authorize the prosecution of the suit without the payment of fees, costs, or security.

Except for the pattern or practice situation, (§ 707(a), 42 U.S.C.A. § 2000e–6(a)), in which the Attorney General may institute suit and intervention by him by leave of the court on the Attorney General's certification that the case is of general public importance (either on his own or in response to recommendation of EEOC, (§ 705(g) (6), 42 U.S.C.A. § 2000e–4(f) (6)), the suit is between private parties.

9. In United States Gypsum Co. v. United Steelworkers of America, 5 Cir., 1967, 384 F.2d 38, 45–46, cert. denied, 1968, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832, we had this to say:
   "Nationwide activity can grind to a halt over the question of who is to throw a switch. Problems which to the outsider seem petty are thought by the adversaries to be matters of great principle, if not principal."
   See Atlanta Terminal Company & Southern Ry. Co. v. System Federation No. 21,

tance with heavy overtones of public interest. Whether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated. Consequently, while we do not here hold that such a "private Attorney General" [10] is powerless absent court approval to dismiss his suit, see F.R.Civ.P. 41(a) (2); the court, over the suitor's protest, may not do it for him without ever judicially resolving by appropriate means (summary judgment, trial, etc.) the controverted issue of employer unlawful discrimination.

In dollars Employee's claim for past due wages may be tiny. But before a Court as to which there is no jurisdictional minimum, (§ 706(f), 42 U.S.C.A. § 2000e–5(f)), it is enough on which to launch a full scale inquiry into the charged unlawful motivation in employment practices. It is even more so considering the prayer for injunction as a protection against a repetition of such conduct in the future.

With so much riding on the claim of the private suitor, the possibility that in this David-Goliath confrontation economic pressures will be at work toward acceptance of preferred post-suit jobs and the equal possibility that an employer would devise such a resist-and-withdraw tactic as a means of continuing its former ways calls for the trial court to keep consciously aware of time-tested principles particularly in the area of public law. Such actions in the face of litigation are equivocal in purpose, motive and permanence.[11]

The dismissal fares no better as to the class action. The Trial Judge's principal thesis on this score was "that no common question of fact exists as to all Negro employees of the defendant, since different circumstances surround their different jobs and qualifications in the structure of the corporation." [12] To that Employer adds several more we find equally wanting. One is that there was

Railway Employees' Dep't., AFL–CIO, 5 Cir., 1968, 397 F.2d 250, affirming a District Court award of $12,000 in attorney fees on a recovery of $2,286.54 in damages. See also Local No. 92, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO v. Norris, 5 Cir., 1967, 383 F.2d 735.

10. "If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Newman v. Piggie Park, supra, 390 U.S. at 400, 88 S.Ct. at 966, 19 L.Ed.2d at 1265.

11. "The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. * * * To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations. * * * [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e., does not make the case moot.*" United States v. W. T. Grant Co., 1953, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309–10 (Emphasis added.)

(Footnotes omitted.); see Gray v. Sanders, 1963, 372 U.S. 368, 375–76, 83 S.Ct. 801, 9 L.Ed.2d 821, 827.

And see Cypress v. Newport News General & Nonsectarian Hosp. Ass'n., 4 Cir., 1967, 375 F.2d 648, 658 (en banc): "Such a last minute change of heart is suspect, to say the least. We recently had occasion to observe in Lankford v. Gelston, 364 F.2d 197, 203 (4 Cir. 1966), under somewhat different circumstances, that 'protestations of repentence and reform timed to anticipate or to blunt the force of a lawsuit offer insufficient assurance' that the practice sought to be enjoined will not be repeated." And in a different context we phrased it this way. "What has been adopted can be repealed, and what has been repealed can be re-adopted. We conclude, therefore, that the plaintiffs are entitled to have their injunction against state action depriving them of their constitutional rights, based on the record at the time the case was tried." Anderson v. City of Albany, 5 Cir., 1963, 321 F.2d 649, 657. See Bailey v. Patterson, 5 Cir., 1963, 323 F.2d 201, cert. denied, City of Jackson v. Bailey, 1964, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609.

12. Jenkins v. United Gas Corp., E.D.Tex., 1966, 261 F.Supp. 762, 763–64.

no class since the other Negro apparently referred to in the administrative charge who was eligible for, but denied promotion to, Serviceman had likewise been promoted. There are at least two answers to that. First, this ignores element (2) of the claim—plant-wide system-wide racially discriminatory employment practices. Second, for the reasons pointed out at length Employee's personal claim is yet very much alive as to (a) back pay differential and (b) injunction protection against future repetition. The other supports urged by Employer are all wrapped up in its championing of Mondy v. Crown Zellerbach Corp., E.D. La.1967, 271 F.Supp. 258, which now falls before Oatis v. Crown Zellerbach, 5 Cir. 1968, 398 F.2d 496.

To *Oatis* we need only add a few comments. The holding that the nature of the claims asserted make it a 23(b) (2) [13] class action was expressly recognized in the Advisory Committee's Note.[14] And the Note's emphasis on declaratory, injunctive relief is easily satisfied by Title VII. See § 706(g), 42 U.S.C.A. § 2000e–5(g).

Indeed, if class-wide relief were not afforded expressly in any injunction or declaratory order issued in Employee's behalf, the result would be the incongruous one of the Court—a Federal Court, no less—itself being the instrument of racial discrimination, which brings to mind our rejection of like arguments and result in Potts v. Flax, 5 Cir., 1963, 313 F.2d 284, 289.[15]

13. F.R.Civ.P. 23:
"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: * * *
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *."

14. "Subdivision (b) (2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.
"Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. See Potts v. Flax, 313 F.2d 284 (5th Cir. 1963); Bailey v. Patterson, 323 F.2d 201 (5th Cir. 1963), cert. denied, [City of Jackson v. Bailey, 76 U.S. 609, 84 S.Ct. 666, 11 L.Ed.2d 609] (1964); Brunson v. Board of Trustees of School District No. 1, Clarendon Cty., S. C., 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933 [83 S.Ct. 1538, 10 L.Ed. 2d 690] (1963); Green v. School Bd. of Roanoke, Va., 304 F.2d 118 (4th Cir. 1962); Orleans Parish School Bd. v. Bush, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921 [77 S.Ct. 1380, 1 L.Ed.2d 1436] (1957); Mannings v. Board of Public Inst. of Hillsborough County, Fla., 277 F.2d 370 (5th Cir. 1960); Northcross v. Board of Ed. of City of Memphis, 302 F.2d 818 (6th Cir. 1962), cert. denied, 370 U.S. 944 [82 S.Ct. 1586, 8 L.Ed.2d 810] (1962); Frasier v. Board of Trustees of Univ. of N. C., 134 F.Supp. 589 (M.D.N.C.1955, 3-judge court), aff'd, 350 U.S. 979 [76 S.Ct. 467, 100 L.Ed. 848] (1956). Subdivision (b) (2) is not limited to civil-rights cases * * *." 39 F.R.D. 102 (1966).

15. In analyzing why there could be a solo representation in a school desegregation case we had this to say:
"Fifth, and perhaps most important, the relief to the class as it was sought and obtained was a good deal more than something merely appropriate. There is at least considerable doubt that relief confined to individual specified Negro children either could be granted or, if

Any effort to distinguish *Oatis* as Employer's brief undertook to do respecting Hall v. Werthan Bag Corp., supra, on the ground that interventions were involved is unavailing. Amended Rules 19, 23, and 24 are meant to, and do, dovetail in many respects. Atlantis Development Corp. v. United States, 5 Cir., 1967, 379 F.2d 818, 824–25. Meeting the test of the right to intervene, F.R. Civ.P. 24, intervention is actually superfluous if—and here there is no if, big or little—element (4) of 23(a) on the adequacy of the representation of the class is satisfied.

The reason given by the Trial Court (see text at note 12, supra) requires only slight, if any, further answer. Basically it misconceives the purpose of the lawsuit. The Federal Judge—awesome as are his responsibilities and powers when invoked by a timely, proper (§ 706(e), (f) 42 U.S.C.A. § 2000e–5(e), (f)) suit—does not sit as a sort of high level industrial arbiter to determine whether employee X rather than Y should have a promotion. Relative competency and qualification, are involved, to be sure. But they are relevant in determining whether denial of the coveted promotion was motivated by unlawful discrimination of race, color, sex or national origin. This is the familiar problem in § 8(a) (3), 29 U.S.C.A. § 158(a) (3) discharges in NLRB cases and, closer home, voter registration cases in which, of course, the class-action-sought-for voting right is the most highly personalized, individualized thing imaginable.

■ And finally, as *Oatis* makes clear in its reference to sub-classes, the Court under F.R.Civ.P. 23 has the duty, and ample powers, both in the conduct of the trial and relief granted to treat common things in common and to distinguish the distinguishable.

Reversed and remanded.

granted, could be so limited in its operative effect. By the very nature of the controversy, the attack is on the unconstitutional practice of racial discrimination. Once that is found to exist, the Court must order that it be discontinued. Such a decree, of course, might name the successful plaintiff as the party not to be discriminated against. But that decree may not—either expressly or impliedly—affirmatively authorize continued discrimination by reason of race against others. Cf. Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. Moreover, to require a school system to admit the specific successful plaintiff Negro child while others, having no such protection, were required to attend schools in a racially segregated system, would be for the court to contribute actively to the *class* discrimination proscribed by Bush v. Orleans Parish School Board, 5 Cir., 1962, 308 F.2d 491, 499, on re-

hearing 308 F.2d 503; see also Ross v. Dyer, 5 Cir., 1962, 312 F.2d 191." In note 5, at 289 we pointed out: "Additionally, as we have recently pointed out, a school segregation suit presents more than a claim of invidious discrimination to individuals by reason of a universal policy of segregation. It involves a discrimination against a *class* as a class, and this is assuredly appropriate for class relief. Bush v. Orleans Parish School Board, 5 Cir., 1962, 308 F.2d 491, 499, modified on rehearing, 308 F.2d 503. See also Ross v. Dyer, 5 Cir., 1962, 312 F.2d 191." See also Hall v. Werthan Bag Corporation, M.D.Tenn., 1966, 251 F.Supp. 184, 186: "If it exists, it applies throughout the class. * * * And whether the Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class."