**Grozelia CARR et al., Plaintiffs-Appellees,**

v.

**CONOCO PLASTICS, INC., Defendant-Appellant.**

**No. 27688.**

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1970.

Rehearing Denied and Rehearing En Banc Denied June 12, 1970.

---

Robert D. Patterson, Patterson, King & Lee, Aberdeen, Miss., Thomas D. Montgomery, Houston, Tex., for defendant-appellant.

Robert B. Fitzpatrick, Jackson, Miss., for plaintiffs-appellees.

H. L. Hutcherson, Jackson, Miss., for Mississippi State Employment Service.

Russell Specter, Acting Gen. Counsel, Julia Cooper, Gen. Atty., Charles L. Reischel, Marian Halley, Attys., E.E. O.C., for the United States Equal Employment Opportunity Commission as amicus curiae.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

PER CURIAM:

We have carefully considered the grounds of appeal in this case in which the trial court for the Northern District of Mississippi overruled the defendant's motions in this Title VII[1] case to dismiss and to strike the allegations pertaining to the complaint as a class action.

Concluding, as we do, that the Findings of Fact and Conclusions of Law of the trial court admirably expound the principles of law and are well suited to stand as the opinion of this court in the much litigated field of law, we accept the Findings of Fact and Conclusions of Law, dated February 14, 1969 as the opinion of this court. 295 F.Supp. 1281. In order to have this opinion in ready reference form we have here annexed such judgment of the trial court to this opinion as Appendix A.

We add the following comment touching on the contention urged by the defendant-appellant that the class which the named plaintiffs claim to represent may include present employees of the defendant whose interests are *adverse* to those of the rest of the class of potential and present Negro employees. As to this, we think that Federal Rule of Civil Procedure 23(c) (4) adequately covers the situation. We think that if upon hearing on the merits it appears that persons who might otherwise be included in this "class" have an adverse interest to protect, the trial court can realign the parties. As stated by this court in Jenkins v. United Gas Corporation, 5 Cir., 1968, 400 F.2d 28 at 35:

> "And finally, as *Oatis* [Oatis v. Crown Zellerbach Corp., 5 Cir., 398 F.2d 496] makes clear in its reference to sub-classes, the Court under F.R. Civ.P. 23 has the duty, and ample powers, both in the conduct of the trial and relief granted to treat common things in common and to distinguish the distinguishable."

The interlocutory orders of the trial court are affirmed.

---

1. Title VII· (Equal Employment Opportunities Section) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.

## APPENDIX A

## ORDER GRANTING SUBSTITUTION

(Number and Title Omitted)   (Filed   )

This cause came for hearing in the Federal District Court House in Oxford, Mississippi on January 22, 1969. Certain motions were agreed upon by counsel for the plaintiffs and counsel for the defendants. It is, therefore,

ORDERED:

1. That the motion to substitute Conoco Plastics, Inc. as the party defendant for Monroe Manufacturing Company is hereby granted. The clerk of the Court will make the substitution on the record file.

2. That the motion to file an amended complaint is hereby granted.

THIS THE 23 day of January, 1969.
s/ORMA R. SMITH
ORMA R. SMITH
District Judge

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

(Number and Title Omitted)
(Filed Feb. 14, 1969)

This action is brought by plaintiffs pursuant to the authority of Title VII of the Civil Rights Act of 1964[1] to enjoin unlawful employment practices on the part of defendants against plaintiffs and all other persons similarly situated. Jurisdiction of the Court is invoked pursuant to the provisions of the act[2] and Title 28 U.S.C. § 1343.

## FINDINGS OF FACT

Plaintiffs are adult Negro citizens of the United States and residents of the Aberdeen Division of the United States District Court for the Northern District of Mississippi.

Plaintiffs bring this action on their own behalf and on behalf of other Negroes similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Defendant Conoco Plastics, Inc. is engaged in the operation of an industry affecting commerce and is an employer within the meaning of the Civil Rights Act of 1964.

Defendant Aldridge is Chairman of MESC,[3] which administers the Mississippi State Employment Service, an employment agency as defined in 42 U.S.C. § 2000e(c). Defendant Wooten is MESC's manager at its office in Aberdeen, Mississippi, and is responsible for the administration of MESC's job classification and referral program in Monroe County, Mississippi.

On March 5, 1968, plaintiffs filed sworn charges with the EEOC[4] alleging violation by defendant company and MESC of rights protected by the act.

There is no controversy as to the sufficiency of the charges described in the complaint and set forth in the affidavits filed by plaintiffs with EEOC.

On August 20, 1968, the defendant company received from the New Orleans office of EEOC copies of the charges made and filed with it by plaintiffs, each being dated March 2, 1968, and marked "received" by the New Orleans Office of EEOC on March 5, 1968. Similar copies were received by defendant Wooten at his Aberdeen office on August 23, 1968, and forwarded to defendant Aldridge, who received them at his Jackson, Mississippi office on August 24, 1968.

On September 10, 1968, EEOC notified each plaintiff by certified mail that the

---

1. 42 U.S.C. § 2000e et seq.

2. 42 U.S.C. § 2000e–5(f).

3. Mississippi Employment Security Commission.

4. Equal Employment Opportunity Commission.

Commission had been unable to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964.[5] This action was filed October 9, 1968.

EEOC did not take any action after receiving the complaints, before the filing of this suit, except to send copies of the charges to defendants and to write letters to plaintiffs as aforementioned.

## THE MOTIONS TO DISMISS

Defendants filed motions to dismiss, alleging that before issuing its letters of September 10, 1968, EEOC did not (1) investigate any one of the charges filed by plaintiffs, (2) make any determination that there existed reasonable cause to believe that one of the charges was true, (3) make any efforts to eliminate the alleged unlawful practices by informal methods of conference, conciliation and persuasion.

Defendants contend that it is a prerequisite to the filing of suits of this nature that the Commission (1) furnish defendant with a copy of the charge, (2) make an investigation of the charge, and, (if the Commission determines, after such investigation that there is a reasonable cause to believe that the charge is true) (3) endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion; that plaintiffs cannot maintain this action because, before issuing its letters of September 10th, EEOC did not do anything except furnish defendants with copies of the charges; and that the failure of the EEOC to investigate the charges, make a determination as to the truthfulness of the same, and endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion, before is-

suing its September 10th letters is fatal to plaintiffs' right of action.

On the other hand plaintiffs contend that the failure of EEOC to perform these duties does not prevent them from prosecuting the action; that they are authorized to file suit when they (1) have filed sworn charges with EEOC, and (2) after the expiration of sixty (60) days, have received notice from EEOC, that the Commission has been unable to obtain voluntary compliance with Title VII of the Act.

The parties have filed excellent briefs and have made able arguments in support of their respective positions.

## CONCLUSIONS OF LAW

The Court is of the opinion that the motions must be overruled on the authority of Dent et al v. St. Louis-San Francisco Railway Corp., et al, 5 Cir., 406 F.2d 399, Jan. 8, 1969, reversing 265 F.Supp. 56, N.D.Ala.1967.

In *Dent* the charge was filed September 10, 1965. Copies of Dent's charge were served on the defendants on October 8, 1965. On December 8, 1965, the Commission issued a decision, after an investigation, to the general effect that there was reasonable cause to believe that defendants were violating Title VII of the Act.

December 15, 1965, defendant company was informed of this decision by letter from the Commission. January 5, 1966, the Commission advised Dent that "the conciliatory efforts of the Commission have not achieved voluntary compliance with Title VII of the Civil Rights Act of 1964. Since your case was presented to the Commission in the early months of the administration of Title VII of the Civil Rights Act of 1964, the Commission was unable to undertake extensive

---

5.  Each letter stated:
    "At your request we advise you that the Commission has been unable to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964. Pursuant to Section 706(e) of the Act, you are hereby notified that you may,

within thirty (30) days of the receipt of this letter, institute a civil action in the appropriate Federal District Court.

\*        \*        \*        \*        \*

"The Commission will continue to process your case and you will be notified of its disposition".

conciliation activities. * * * Under Section 706(e) of the Act, you may within thirty (30) days from receipt of this letter commence a suit in Federal district court."

Action was filed in the District Court on February 7, 1966.

The District Court dismissed the action on the ground that "conciliation * * * is a jurisdictional prerequisite to the institution of a civil action under Title VII". The Circuit Court of Appeals for the Fifth Circuit reversed, and said:

"Section 706(e), 42 U.S.C. 2000e-5(a), after making reference to the receipt by the Commission of a charge of unlawful employment practice, provides:

'The Commission shall * * * make an investigation of such charge. * * * If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.'

"Section 706(e), 42 U.S.C. 2000e-5(e), provides:

'If, within thirty days after a charge is filed with the Commission * * * (except that * * * such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this title, the Commission shall so notify the person aggrieved, and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * *.'

"Section 706(e) further provides:

'Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending * * * the efforts of the Commission to obtain voluntary compliance.'

"Thus it is quite apparent that the basic philosophy of these statutory provisions is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action. However, we are of the opinion that a plain reading of the statute does not justify the conclusion that, as a jurisdictional requirement for a civil action by the aggrieved employee under Section 706(e), the Commission must actually attempt and engage in conciliation."

The opinion of the Court continues:

"In arriving at the conclusion that actual conciliatory efforts are jurisdictionally prerequisite, the District Court relied heavily on the legislative history of the Act. The majority and dissenting opinions in Johnson and Walker, 4 Cir., supra,[6] extensively analyze this aspect of the problem, obviating any necessity for prolonged repetition here. As a matter of fact, the Congressional committee reports and floor debates lend great comfort to both sides. This, we believe, leaves no clearly discernible Congressional intent, certainly not enough to avoid plain statutory language. Section 2000e-5(e), Title 42, U.S.C.A. very clearly sets out only two requirements for an aggrieved party before he can initiate his action in the United States district court: (1) he must file a charge with the Equal Employment Opportunity Commission and (2) he must receive the statutory notice from the Commission that it has been unable to obtain voluntary compliance."

The plaintiffs in this case filed charges with the Commission and received notices from the Commission that it had been unable to obtain voluntary

6. Johnson v. Seaboard Coast Line Railroad Company (Walker v. Pilot Freight Carriers, Inc.), 5 Cir., 405 F.2d 645.

compliance. The two requirements of the statute as determined by Dent have been met by plaintiffs. The Court is of the opinion that they had a right to bring this action.

Judge Coleman, Circuit Judge, in *Dent* added:

"The Court does not have before it, and it is not now passing upon, a situation, if there were to be one in which the Commission as a matter of routine simply abandons all efforts at actual conciliation."

Since the plaintiffs have met suit requirements as laid down in *Dent,* The Court does not feel that the facts of this case bring it within the class of cases to which Judge Coleman had reference.

Even if no efforts were made at all, plaintiffs should not be made the innocent victims of a dereliction of statutory duty on the part of the Commission. Choate v. Caterpillar Tractor Co., 7 Cir. 1968, 402 F.2d 357.

The motion to dismiss will be overruled.

## DEFENDANT'S MOTION TO STRIKE

Defendant company questions the right of plaintiffs to bring a class action pursuant to Rule 23(a) and (b) (2).[7]

The motion is two-fold. One reason urged by defendant company in support of its motion is that the amended complaint does not allege that the said defendant has followed an avowed policy of discrimination in its hiring policies.[8]

The other reason is that plaintiffs cannot represent a class which encompasses employees (of which class they are not members) as to discrimination in the maintenance of certain positions for whites only, and others for Negroes only, and maintaining certain facilities within the plant which are segregated with reference to race.

In support of its position that plaintiffs may not maintain a class action because plaintiffs have not alleged the existence of an avowed policy of discrimination, defendant Company cites Johnson v. Yeilding et al., 165 F.Supp. 76 (N.D.Ala., 1958) and Reddix v. Lucky, (5 Cir. 1968), 252 F.2d 930.

---

7. "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the case as a whole".

8. The Amended Complaint charges:
"10. Upon information and belief, defendant Company has discriminated against the plaintiffs and the members of their class by:

(a) failing and refusing, and continuing to fail and refuse, to permit the plaintiffs and their class to apply for employment at the defendant Company's Aberdeen plant because they are members of the Negro race;

(b) Failing and refusing, and continuing to fail and refuse, to hire the plaintiffs and their class because they are members of the Negro race;

(c) maintaining certain positions for whites only and others for Negroes only; and

(d) maintaining certain facilities within the plant which are segregated on the basis of race.

11. By these acts of racial discrimination, defendant Company has and continues to commit unlawful employment practices in violation of the Act."

Neither of these cases support this view. In *Johnson* the rules and regulations of the Personnel Board of Jefferson County, Alabama, provided that all applicants for examination for police patrolman "must be white".[9] The Court held that "this action is properly brought as a class suit under Rule 23(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in as far as it challenges * * the denial to such others the right to take the examination and to be placed on the eligible list, solely on account of their race and color. Otherwise, plaintiff and those similarly situated are to be treated as individuals and not as a class". 165 F.Supp. 79.

In *Reddix* the Court had under consideration an action brought by a Negro on behalf of himself and all other Negro voters of a Louisiana Parish for declaratory injunction and damages arising out of the action of the Parish Registrar of Voters in cancelling Negro voter registrations. The Court held that the case was not a proper case for a class action.[10]

It is obvious that these cases are not in point with the case sub judice. The effect of Johnson was to require the board to furnish application forms and give examinations to applicants, and place those successfully completing examinations on the eligible list, without regard to race or color. Once on the eligible list each applicant had to be judged on the merits of his particular situation.

In *Reddix* plaintiff's right to remain on the rolls of voters was challenged as was the right of 3,000 other Negroes. Plaintiff and 2,500 of the other Negroes were disqualified and struck from the rolls. Plaintiff claims this action to have been violative of their constitutional rights because the challenge was conducted wholly on the basis of race. Obviously, as the Court held, this was not a case for a class action.

In the case sub judice plaintiffs by their class action seek to enjoin racial discrimination in hiring practices and in the internal operation of the plant. While each Negro applicant may have different circumstances, different qualifications and different prior work records, they seek to assert a question of fact common to members of their class —racial discrimination against all Negroes.

The Court finds that plaintiffs have the right to bring this class action. While there are many cases that support this view, the Court needs only to mention two recent cases of the Circuit Court of Appeals for the Fifth Circuit.[11]

In *Oatis* there were four plaintiffs, Hill, Oatis, Johnson and Young. Each sued on behalf of himself and all present and prospective Negro employees of the plant, as a class, seeking injunctive relief against unfair employment practices as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2 and 3. Prior to the action Hill filed a formal charge with EEOC. Hill received

---

9. "The law requires the Personnel Director to 'prepare and submit to the board for its consideration and approval such forms, rules and regulations as are necessary to carry out the provisions of this sub-division, including the rules governing examinations * * *' and provides that 'Such rules and regulations must be approved by a two-thirds majority of the personnel board before becoming effective after which they shall have the force and effect of law * *.' (Code of Ala.1940, T 62 § 330 (32 Supp.)" 165 F.Supp. 76.

10. "We think this is not a proper case for a class action. Obviously the right of each voter depends upon the actions taken with respect to his own case. As to some,

it may well be that they were notified in accordance with legal requirements; as to some the affidavits may have been taken according to law; as to some they may have been adequately served in spite of the large crowds which plaintiff alleges prevented him from getting the defendant's attention. The fact that each voter must allege and prove the circumstances that might add up to an illegal purge, makes it inappropriate, if not impossible, for a single plaintiff to represent them in a class action." 252 F.2d 938.

11. Oatis et al. v. Crown Zellerbach Corp., et al., 5 Cir., 1968, 398 F.2d 496.
   Jenkins v. United Gas Corp., 5 Cir., 1968, 400 F.2d 28.

a letter from the Commission advising him that it had been unable to obtain voluntary compliance from the employee within the sixty days required by the Act. Suit was commenced two weeks later. Defendants filed motions to dismiss on the grounds that an action under the Act could not be brought on behalf of a class, and that, in any event, plaintiffs Oatis, Johnson and Young could not join in the action as co-plaintiffs inasmuch as they had not filed a charge with EEOC.

The district court held that the action could be maintained as a class action, but the class was limited to those Negro employees who had filed charges with EEOC pursuant to § 706(a) of the Act. Oatis, Johnson and Young had not filed such a charge and motions to dismiss were granted as to them.

Plaintiffs asserted on appeal that a class action will lie if at least one aggrieved person has filed a charge with EEOC. Defendants contended that the administrative, private remedy intent and purposes of the Act will be circumvented and avoided if only one person may follow the administrative route dic-

tate of the Act and then sue on behalf of the other employees. The Fifth Circuit rejected the view of defendants and reversed the lower court.[12]

*Jenkins* involved a suit by a Negro employee to enjoin an alleged violation of Title VII of the Act. Jenkins was working as a "serviceman's helper" at the time the action was consummated. Before bringing the action Jenkins filed a charge with EEOC that he had been denied a promotion because of his race. The complaint presented a class action and alleged that there existed a plant-wide, system-wide racial discrimination which took its toll of plaintiff and his class principally in denial of promotion to the position of serviceman. Within a few weeks Jenkins was offered and accepted the promotion, whereupon the corporate defendant moved to dismiss the action as moot. The district court dismissed the action. The Fifth Circuit reversed.[13]

The contention is made that the class action should not extend to the plant's internal operation since plaintiffs are

12. The Court held:
"We again reject it. The Act permits private suits and in nowise precludes the class action device.
"Moreover, it does not appear that to allow a class action, within proper confines, would in any way frustrate the purpose of the Act that the settlement of grievances be first attempted through the office of the EEOC. It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful. The better approach would appear to be that once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated and we proceed to an examination of this view.
\* \* \* \* \*
"We thus hold that a class action is permissible under Title VII of the Civil Rights Act of 1964 within the following limits. First, the class action must, as it does here, meet the requirements of Rule 23(a) and (b) (2). Next, the issues that

may be raised by plaintiff in such a class action are those issues that he has standing to raise (i. e., the issues as to which he is aggrieved, see § 706(a) (supra), and that he has raised in the charge filed with the EEOC pursuant to § 706(a). Here then the issues that may be considered in the suit are those properly asserted by Hill in the EEOC charge and as are reasserted in the complaint." 398 F.2d 498–499.

13. In doing so the Court said:
"When conciliation has failed—either outright or by reason of the expiration of the statutory time-table—that individual, often obscure, takes on the mantel of the sovereign. Newman v. Piggie Park Enterprises, Inc., 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263; Oatis v. Crown Zellerbach Corp., supra. And the charge itself if something more than the single claim that a particular job has been denied him. Rather it is necessarily a dual one: (1) a specific job, promotion, etc. has actually been denied, and (2) this was due to Title VII forbidden discrimination.
"Considering that in this immediate field of labor relations what is small in principal is often large in principle, ele-

not members of the class composed of employees.

The Court permitted EEOC to file a brief as amicus curiae and to present oral argument because of the important issues raised as to the interpretation of the Act. Both were ably presented and have been very helpful to the Court.

The Commission's brief and argument relate solely to the question of whether, in a suit brought pursuant to the Act by persons claiming that an employer has violated § 703(a) (1) of the Act by refusing to hire them because of their race, may also allege and seek to enjoin other unlawful employment practices committed by the same employer, if those practices, although not directly injurious to them at the time of their application for employment, potentially affect them because of their race. The Court holds that they can.

The plaintiffs here seek equal opportunity for employment, and charge defendants with discriminating against them on account of race. There can be no serious question but that plaintiffs have the right to bring the action for themselves and others similarly situated. Envisioning an equal opportunity for employment plaintiffs have the corre-lated right to enjoy nondiscriminatory practices within the plant.

It is foolhardy to say that once plaintiffs have removed racial discriminatory practices at the door, they are required to start anew in order to remove those that exist on the inside. Such a practice would result in a multiplicity of suits and a waste of time and money for all interested parties.

This is supported by numerous authorities. Singleton v. Board of Commissioners of State Institutions, 5 Cir., 1966, 356 F.2d 771, where public facilities were involved and the Court held "the plaintiffs must show past use of the facilities, where feasible, and a right to, or a reasonable probability of future use". Anderson v. City of Albany, 5 Cir., 1963, 321 F.2d 649, where the Court held that in a class action to enjoin enforcement of segregation of the races in certain public and private facilities of the city it was not required that a plaintiff must have subjected himself to arrest before bringing the action. Cypress v. Newport News General & Nonsectarian Hospital Ass'n., 4 Cir., 1967, 375 F.2d 648, where the Court held that class actions are to be considered in light of the particular cir-

---

ment (2) has extreme importance with heavy overtones of public interest. Whether in name or not, the suit is perforce of a sort of class action for fellow employees similarly situated.

\*　　\*　　\*　　\*

"The dismissal fares no better as to the class action. The Trial Judge's principal thesis on this score was 'that no common question of fact exists as to all Negro employees of the defendant, since different circumstances surround their different jobs and qualifications in the structure of the corporation'. To that Employer adds several more we find equally wanting. One is that there was no class since the other Negro apparently referred to in the administrative charge who was eligible for, but denied promotion to, Serviceman had likewise been promoted. There are at least two answers to that. First, this ignores element (2) of the claim—plant-wide racially discriminatory employment practices. Second, for the reasons pointed out at length Employee's personal claim is yet very much alive as to (a) back pay differential and (b) injunction protection against future repetition. The other supports urged by Employer are all wrapped up in its championing of Mondy v. Crown Zellerbach Corp., E.D.La.1967, 271 F.Supp. 258, which now falls before Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496.

"To Oatis we need only add a few comments. The holding that the nature of the claims asserted make it a 23(b) (2) class action was expressly recognized in the Advisory Committee's Note. And the Note's emphasis on declaratory injunctive relief is easily satisfied by Title II. See § 706(g) 42 U.S.C.A. § 2000e-5 (g).

"Indeed, if class-wide relief were not afforded expressly in any injunction of declaratory order issued in Employee's behalf, the result would be the incongruous one of the Court—A Federal Court, no less—itself being the instrument of racial discrimination, which brings to mind our rejection of like arguments and result in Potts v. Flax, 5 Cir., 1963, 313 F.2d 284, 289." 400 F.2d 32–34.

cumstances of the case and sustained a class action in the suit against a hospital to open its staff to Negroes. Rackley v. Board of Trustees of Orangeburg Regional Hospital, 4 Cir., 1962, 310 F.2d 141, a suit to desegregate a hospital where the Court held that plaintiff would not be required to prosecute separate suits for each activity or department of the hospital.

The motion to strike will be over-ruled and an appropriate order entered.

February 14, 1969

/s/ Orma R. Smith
ORMA R. SMITH
UNITED STATES
DISTRICT JUDGE

ON PETITION FOR REHEARING AND PETITION FOR REHEAR-ING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.