Horace L. PATTERSON, John W. Davis, Sidney A. Dent, Robert E. Dickerson, Alfred Edwards, Clifton Everett, Amos Holman, John Hubbart, James L. Keel, and Neal White, Plaintiffs,

v.

YOUNGSTOWN SHEET & TUBE COMPANY and Local 6, Bricklayers, Masons and Plasterers International Union of America, AFL–CIO, Defendants.

No. 71 H 301.

United States District Court, N. D. Indiana, South Bend Division.

Aug. 12, 1977.

Leroy P. Vital, Chicago, Ill., Frederick T. Work, Gary, Ind., Earl B. Williams, Chicago, Ill., for plaintiffs.

Bernard M. Mamet, Lawrence L. Summers, Chicago, Ill., Joseph E. Costanza, East Chicago, Ind., Milton P. Webster, Michael A. Reiter, EEOC, Chicago, Regional Litigation Center, Chicago, Ill., for defendants.

## MEMORANDUM

ALLEN SHARP, District Judge.

### I—INTRODUCTION

This action was commenced on October 22, 1971 with the filing of a Complaint by ten individual Plaintiffs against Youngstown and Defendant Local 6, Bricklayers, Masons and Plasterers International Union of America, AFL–CIO ("Local 6"), alleging employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Plaintiffs sought to bring their suit as a class action, and on

---

1. The legislative history of this statute may be found at 1964 U.S. Code Congressional and Administrative News, p. 2355, and 1972 U.S. Code Congressional and Administrative News, p. 2137: cf. *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084, 1090–1091 (5th Cir. 1975).

November 14, 1972, the Honorable George N. Beamer determined that it could then be maintained as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) and (3) on behalf of the following class:

. . . black employees of [Youngstown] who are employed as masons' helpers and who have so been employed on or since July 2, 1965 or enjoyed right of recall as of that date.

Following extensive discovery by Plaintiffs with respect to the employment of members of the above class at Youngstown's Indiana Harbor Works, discovery was closed and the matter was set for trial on a date certain. Following the close of discovery, Youngstown filed its Motion For Partial Summary Judgment dated March 1, 1977 seeking an Order that certain allegations in the Complaint be dismissed and the trial be limited to the sole issue properly before this Court. Thereafter, on May 12, 1977, this Court entered an Order granting in part, and denying in part, Youngstown's Motion For Partial Summary Judgment, framing the sole remaining issue thusly:

. . . the complaint is hereby limited to the issue of whether Defendant Youngstown and/or Defendant Local 6 denied Plaintiffs the opportunity to move from the position of mason helper to that of brickmason or brickmason apprentice because of Plaintiffs' race.

Prior to the entry of the above Order, Plaintiffs filed their Motion For Summary Judgment As To Liability Against Defendant Company on March 11, 1977. The Complaint having been subsequently limited, this Court will now turn to an examination of the remaining issue, in response to Plaintiffs' Motion.

### 1. Motion for Summary Judgment

Summary judgment should only be entered when the pleadings, dispositions, answers to interrogatories, affidavits, and admissions filed in the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 F.R.C.P. Under this Rule the movant bears the heavy burden of demonstrating the absence of all material factual issues; furthermore, all factual uncertainties shall be resolved in favor of the non-moving party. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973); *Albert Dickinson Co. v. Mellos Peanut Co.*, 179 F.2d 265, 268 (7th Cir. 1950). In this instance, the Court is satisfied that Plaintiffs have met this burden, as discussed, *infra*.

### II—PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AGAINST DEFENDANT COMPANY

### 1. Pre-Title VII Employment Practices

Plaintiffs argue, with supportive affidavits, that prior to the effective date of Title VII, 2 July 1965, Youngstown segregated and limited those Black male employees hired as mason helpers to that restricted category and refused to allow them to be promoted to apprentice masons and masons. Youngstown's reply has been two-fold: first, that all such specified events are irrelevant, as they precede the effective date of Title VII (pp. 8–9, Memorandum In Opposition); second, that Plaintiffs' affidavits are directly contradicted by the affidavit of one Mr. Benedetto M. Leonard.

■■■ It is well settled that the provisions of Title VII are not retroactive in effect; discriminatory employment practices happening prior to 2 July 1965 and ending thereafter will not, when standing alone, give rise to a cause of action. *See, e. g., James v. Stockham Valves & Fittings Co.*, 394 F.Supp. 434, 493 (D.Ala.1975). However, Title VII places an affirmative duty upon an employer to rectify the current effects of wrongful discrimination which existed before passage of the Act. *See, e. g., Local 189, United Papermakers & Paperworkers, A.F.L.–C.I.O., C.L.C. v. United States*, 416 F.2d 980, 987–91 (5th Cir. 1969). Subsequent to 2 July 1965, then, failure on the part of an employer to voluntarily remove the discriminatory effects of its pre-Act employment practices will constitute an encroachment of Title VII, pro-

vided the aggrieved party can establish a causal nexus between past discrimination and present conditions of employment. *James v. Stockham Valves & Fittings Co.,* supra, at 493. For this reason, the Company's employment practices and policies in effect before 1965 are relevant to this case.

Further, Youngstown's allegation that "Plaintiffs' affidavits are directly contradicted by the Leonard affidavit" is, quite simply, incorrect. A close reading of all materials reveals no contravention of Plaintiffs' allegations by Youngstown.

Consequently, as Youngstown has not refuted Plaintiffs' averments of discriminatory conduct, the Court finds that prior to 2 July 1965, Youngstown segregated and limited those Black male employees hired as mason helpers to that restricted category and refused to allow them to be promoted to apprentice masons and masons. As stated above, however, such findings do not constitute violations of Title VII unless Plaintiffs establish a nexus between the discriminatory practices just described and post July 1965 employment conditions. To that matter the Court now turns.

### 2. *2 July 1965—21 September 1969*

Although the Civil Rights Act of 1964 became effective July 2nd of that year, the provisions of Title VII did not take effect until 2 July 1965. The enforcement delay was permitted so that employers would have sufficient time in which to familiarize themselves with the new legislation as well as to remove from their employment systems all unjustified forms of segregation. In this case, Plaintiffs claim that from the effective date of Title VII until a point in time at least encompassing 21 September 1969, the date Plaintiffs filed charges against Youngstown with the E.E.O.C., Youngstown maintained the same segregated employment system which existed before passage of the Act. This is done primarily through statistics, establishing a prima facie case of racial discrimination for the time period discussed.

When discrimination in employment practices and conditions is alleged, the plaintiff must first establish a prima facie case by showing disparate treatment between two classes of individuals. Generally, statistical evidence is used to accomplish this task. *James v. Stockham Valves & Fittings Co.,* supra, at 492. The Supreme Court has made it "unmistakably clear that statistical analyses have served and will continue to serve an important role in cases in which the existence of discrimination is a disputed issue." *International Brotherhood Of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417 (1977); *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 620, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974). *See also, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Cf. Washington v. Davis,* 426 U.S. 229, 241–242, 96 S.Ct. 2040, 2048–2049, 48 L.Ed.2d 597 (1976). However, as the Supreme Court also noted in *International Brotherhood Of Teamsters v. United States,* supra, at 97 S.Ct. 1856–1857:

> We caution only that statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all the surrounding facts and circumstances.

In this particular case, the Court is convinced that the available statistics are valid and useful to the extent that they establish the existence of post-Title VII employment practices and conditions of a racially discriminatory nature, causally connected to pre-Act policies and practices of Youngstown.

This is due to two factors: first, that the statistics themselves are those supplied by Youngstown in its admissions and stipulations; and, second, that Youngstown has not attempted to refute these statistics—as well it could not, since its own truthfulness could be called into question by such conduct—but has, instead, attempted to blur the issue at hand by combining the statistics pertinent to this time period with those of post-E.E.O.C. charge activities.

Youngstown has admitted, pursuant to Plaintiffs' request for admissions and in the

Pre-Trial Order, the following regarding the time period of 2 July 1965–21 September 1969:

1. No Caucasian employees were assigned as mason helpers during the entire period.

2. No mason helpers were transferred to the classification of mason during the entire period.

3. As of the departmental seniority listed dated 1 January 1970, Youngstown had 98 employees in unit 40 of the mason department, which includes brickmasons. All but 5 of these were Caucasian; only 1 Negro was listed as a brickmason.

4. The same list also reveals that Youngstown had 188 employees in unit 41 of the mason department, which includes mason helpers. All of these were Negroes.

The Court finds this ample statistical basis for establishment of a prima facie case of racial discrimination, obviously connected with pre-Title VII employment practices of Youngstown, discussed *supra*.

As Judge Swygert, in *Stewart v. General Motors Corp.*, 542 F.2d 445, 449 (7th Cir. 1976), stated:

Where statistical evidence demonstrates a discrepancy between the racial composition of those promoted to a given job and the pool of eligible applicants which is too great to reasonably be the product of random distribution, the burden should be placed on the employer to show that this disparity is the product of nondiscriminatory factors. *See United States v. Local 169, United Brotherhood of Carpenters*, 457 F.2d 210, 214 (7th Cir.), *cert. denied*, 409 U.S. 851, 93 S.Ct. 63, 34 L.Ed.2d 94 (1972); *Rowe v. General Motors Corp.*, 457 F.2d 348, 358 (5th Cir. 1972).

■ To rebut these statistics, Youngstown deftly combines the 2 July 1965–21 September 1969 period, with the post-E.E.O.C. charge period of 22 September 1969–1 April 1977. While this does present a statistical analysis more favorable to Youngstown, it fails to raise a valid defense. Action taken by an employer subsequent to the filing of E.E.O.C. charges cannot moot issues of discrimination occurring prior to that time. To hold otherwise would permit a potential defendant to simply manipulate the statistical evidence in order to avoid liability under Title VII. Although Title VII encourages conciliatory action, it does not condone concealment. Thus, once having restricted an employee's job opportunities on the basis of race, it is no excuse that Youngstown "saw the light" after E.E.O.C. charges were filed. *See, McCoy v. Safeway Stores, Inc.*, 5 FEP Cas. 628 (D.D.C.1973); *see, also, Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968) (corrective action taken subsequent to filing of lawsuit in federal court considered irrelevant).

■ Youngstown also argues that it was not in control of the mason apprenticeship program during the relevant time period. Assuming *arguendo* this to be true, an allegation contested by Plaintiffs, it is without merit. All parties to an employment situation within the purview of Title VII have a duty of affirmative action to rectify situations such as this. To allow one party to point to another, thereby escaping their duty of affirmative action, would emasculate the concept and lead to a carnival of merry-go-round litigation. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 422, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 851 (5th Cir. 1977).

Again quoting Judge Swygert, in *Stewart v. General Motors Corp.*, *supra*, at 450:

Since defendant has therefore failed to rebut the prima facie case which plaintiffs' statistical evidence makes out, we hold . . . its . . . practices . . . . discriminatory in violation of Title VII.

Next, Youngstown points to some factual matters in genuine controversy, contending that these preclude the Court from entering the motioned summary judgment. As this is clearly erroneous, the particulars need not be reviewed here. The Court finds that

all facts material to a determination of liability as to Youngstown, for the time period indicated, are not controverted and provide ample basis for entering the summary judgment. Rule 56, F.R.C.P.

## CONCLUSION

There is no genuine issue as to any material fact with respect to Plaintiffs' Motion. For the above reasons, this Court finds that Defendant Youngstown Sheet and Tube Company, was in violation of 42 U.S.C. §§ 2000e et seq. ("Title VII"), for the period of 2 July 1965–21 September 1969, as it denied Plaintiffs the opportunity to move from the position of mason helper to that of brickmason or brickmason apprentice because of Plaintiffs' race.