**AMERICAN FINANCE SYSTEM INCORPORATED and American Finance System Incorporated Profit Sharing Retirement Trust, by its Trustees, Plaintiffs and Counterdefendants,**

v.

**Thomas L. HARLOW, Individually and as representative of a class of persons similarly situated, Defendant and Counterplaintiff,**

and

**C. D. Pickrel, Jr., Defendant and Counterplaintiff-Intervenor,**

and

**Bradley H. Carter et al., Counterplaintiffs-Intervenors.**

**Civ. No. 71-651-HM.**

United States District Court,
D. Maryland.

Jan. 14, 1974.

See also D.C., 65 F.R.D. 94.

Joseph H. H. Kaplan, Baltimore, Md., John A. Cardon, Herbert L. Awe,

Charles W. Gilchrist, Washington, D. C., for plaintiffs and counterdefendants.

Robert B. Fitzpatrick, Washington, D. C., and Kenneth L. Johnson, Baltimore, Md., for defendants, counterplaintiffs, and the intervening counterplaintiffs.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

The plaintiff, American Finance System, Incorporated (hereinafter AFS) and the trustees of the American Finance System Incorporated Profit Sharing Retirement Trust (hereinafter the Trust) brought this action for a declaratory judgment to determine whether Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.) compels the trustees to distribute Trust funds or "vested shares" in the corpus to certain former employees. The Trust was established in 1955 by AFS as a voluntary and non-contributory pension plan for the benefit of its employees. Contributions to this Trust are made from the profits of AFS and its subsidiaries and are allocated among participating employees in proportion to their individual compensation. These funds are then invested as a unit and the appreciation or depreciation of the investments is adjusted on the accounts of the participants by a formula which reflects the undivided interest of each in the Trust.

Until the passage of the Civil Rights Act of 1964 making it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ," the plaintiff never questioned the legality of paying a female employee her vested share of the Trust upon termination, but retaining the share of a departing male until he reached age fifty. While the male's vested interest remained frozen in the Trust, it was available for investments that generated profit for the benefit of

the Trust without interest accruing on the individual share. To remedy this potential violation of the Act, the Trust was amended, effective January 1, 1970, to provide that no employee, male or female, who terminated subsequent to January 1, 1970 and prior to their fiftieth birthday, could receive his or her share until they reached age fifty.

Because the amended Trust did not cover those males who left before 1970 and after the effective date of the Civil Rights Act, July 2, 1965, the plaintiffs sought a ruling from this Court against these former employees as a class, represented by Harlow and Pickrel, that Title VII does not require the immediate payment of their vested share. Thereafter, defendant Harlow counterclaimed to compel distribution and the payment of interest, expenses, costs and attorney's fees as a consequence of plaintiffs' violation of Title VII and the Equal Pay Act of 1963. Pickrel also filed a separate counterclaim and Bradley Carter, a former employee of AFS, was permitted to intervene in Harlow's original counterclaim by order of this Court dated March 3, 1972. Now pending before the Court are several motions including two motions by Harlow seeking leave to file amended counterclaims, the motions of Pickrel and Carter to intervene in Harlow's second amended counterclaim and a motion by all representative parties to certify the second amended counterclaim as a proper class action pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure. On July 5, 1972, Harlow and the other prospective counterplaintiffs moved for certification of the counterclaim as a proper class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure. After a series of memoranda [1] proposing different class designations, counsel for the representative parties entered into settlement negotiations with AFS' and this Court withheld a decision on certification pending the outcome. These discussions eventually foundered on AFS' refusal to distribute interest with the retained share and their desire to exclude male employees who quit prior to the effective date 'of the Civil Rights Act of 1964 from its terms.

AFS next requested the Court's permission to offer a compromise to individual class members.[2] Acceptance of the offer would entitle each former employee to the full amount of his vested benefit in exchange for a written release of his right to participate in the litigation and any claims for interest. The representative parties urge the Court to deny the motion and enjoin AFS from contacting potential class members with their offer. They contend that their refusal of similar terms during the negotiations was not unreasonable under the applicable case law which purportedly supports the claim for interest and that future discussions of settlement must be conducted through counsel for the putative class representatives whose rejection of any compromise binds all prospective class members. The real basis for these arguments is the concern that widespread acceptance of a prejudically worded offer could destroy the numerosity necessary to maintain a class action under Rule 23(a)(1).

---

1. Counter-plaintiffs filed a memorandum advocating certification of several distinct classes as late as March 12, 1973, just prior to the start of negotiations between the parties.

2. This motion to offer settlement as well as the prior negotiations were prompted by a recent ruling of the Internal Revenue Service which forces a periodic adjustment of the terminated employees interest when payment is deferred until his or her retirement. If the Trust is not amended to comply with this ruling, its charitable deduction could be lost. As a result, the employee's share will reflect the fluctuations in the value of the underlying trust assets. Counter-plaintiffs urge that the ruling supports their claims for interest while AFS observes that the asset value could also fluctuate downward. See, Rev.Rul. 73–103, No. 1973–9 I.R.B. 7.

■ The premise supporting these contentions is that an action "must be assumed to be a class action for purposes of dismissal or compromise under Rule 23(e) unless and until a contrary determination is made under 23(c)(1)." Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324 at 326 (E.D.Pa.1967). This statement by Judge Fullam is supported by the Advisory Committee Reports and has been adopted by numerous courts. *See, e. g.* Greenfield v. Villager Industries, Inc., 483 F.2d 824 at 833 (3rd Cir. 1973); City of Inglewood v. City of Los Angeles, 451 F.2d 948 (9th Cir. 1971); Sheffield v. Itawamba Co. Board of Supervisors, 439 F.2d 35 at 36 (5th Cir. 1971). But each cited decision involves an attempted compromise by putative class representatives that would bind class members through principles of res judicata or the running of the statute of limitations once the class action was dismissed. As Judge Fullam declared:

> Under any view of the matter, however, the proposed settlement must be regarded as attempting to compromise the claims of the class, not just the named plaintiffs. Rule 23(e) clearly applies to the situation; indeed due process concepts might well be held to require notice, even in the absence of Rule 23(e).

Philadelphia Electric Co., *supra*. The policy of these decisions is the protection of absent class members from collusive settlements by interposing court supervision and an opportunity for each to opt out and continue the suit. Philadelphia Housing Authority v. American R & S Sanitary Corp., 323 F.Supp. 364 (D.C.Pa.1970) (Harvey J.).

■ This rationale, however, offers no justification for the representative parties' erroneous presumption that AFS is absolutely prohibited from negotiating compromises with individual class members. In Weight Watchers of Philadelphia v. Weight Watchers International, 455 F.2d 770 (2nd Cir. 1972), Judge Friendly dismissed this contention:

> Plaintiff's attempt to escape this conclusion by asserting that once a plaintiff brings suit on behalf of a class, the court may never permit communications between the defendant and other members, even when . . . both desire this, is in conflict not only with Suggested Local Rule No. 7 and Sample Pretrial Order 15, but with elementary considerations of common sense—and possibly . . . with a command of higher authority as well. Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a 'spurious' class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of a mind to do this; it is only the settlement of the class action itself without court approval that F.R.Civ.P. 23(e) prohibits. at 773.

Likewise, Rule 20 of the United States District Court for the District of Maryland only forbids solicitations by formal parties requesting a class member to opt out of a Rule 23(b)(3) class action. While the representative parties have sought certification under both Rule 23 (b)(2) and (3), the Court believes that claims under Title VII of the Civil Rights Act are most appropriately brought as a Rule 23(b)(2) action. See, Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). Although this conclusion is less certain for Equal Pay Act claims, the Court construes Local Rule 20 to permit pre-certification communications between the named parties and the prospective class members within the strict limits delineated by this Memorandum and Order when a class action is alleged under both provisions of Rule 23. Moreover, this result reinforces the prophylactic role of

the court established by Rule 23(e) [3] and avoids any constitutional questions that might be raised by a complete ban on settlement communications. See *Weight Watchers of Philadelphia, supra.*

Counterbalancing these considerations is the danger that the class action vehicle will be eviscerated by violators of the Civil Rights Acts who are able to convince legally unsophisticated class members that their claims are unlikely to succeed. Even in *Weight Watchers,* a case not involving a Civil Rights Act, the lower court required that counsel for each franchisee be present during the discussion and that counsel for the class representative be given five days notice of such negotiations, 55 F.R.D. 50 (1971). Given this judicial concern and the guidelines of the Manual For Complex and Multidistrict Litigation, the Court will only permit AFS to send a neutrally worded notice of settlement containing no more than the terms of the proposed compromise, the position of both parties and a copy of this Memorandum and Order.[4] If the potential class member affirmatively rejects the offer or fails to answer within thirty days, the Court will assume that he wishes the action to proceed to judgment.[5]

While the Court has no obligation to approve the settlement at this time, such power could be exercised if the counter-defendants seek a dismissal of the putative class action because the requisite numerosity is destroyed by a large number of acceptances. In Banks v. Lockheed-Georgia Co., 46 F.R.D. 442 (N.D.Ga.1968), Judge Morgan refused to dismiss a class action brought under Title VII even though conciliation mooted the class action claims of the named plaintiffs. This result is justified by the command of Rule 23(e) which forbids the dismissal of a representative action without prior court approval. If the Court decides that a class action was maintainable irrespective of the accepted compromise and that denial may preclude relief to an appreciable segment of the class beyond the representative parties, then the signed releases should have no effect on the continuation of the suit. To determine whether the remaining members are numerically sufficient, the Court will first weigh the burden to AFS in allowing the class action against the burden to the residual claimants from its denial before considering the inconvenience of joinder within the meaning of Rule 23(a). See Dole, The Settlement of

---

**3.** The Court does not suggest that the class representatives and AFS have attempted collusive conciliation or that the class representatives have unreasonably opposed settlement, but rather that the policy underlying Rule 23(e) forces the Court to consider these possibilities.

**4.** The notice also contains the names and addresses of counsel for both sides so the putative class member can inquire further about the terms of the proposed settlement. To insure the objectivity of the response of counsel, the Court will scrutinize the content before they are mailed.

**5.** At the suggestion of the Court, counsel for the parties filed proposed notices. To achieve the necessary neutrality, the Court has modified the language of these submissions and combined them into the single statement of terms found in Appendix I.

The content does reflect the concerns of both parties and the only substantive addition is the admonition of Judge Harvey in Philadelphia Housing Authority v. American R. & S. Sanitary Corp., 323 F.Supp. 364 (1970) that:

This notice is not to be understood as an expression of any opinion by this Court as to the merits of any of the claims or defenses asserted by either side in this litigation or as to any amount that any claimant would receive on settlement, but is sent for the sole purpose of informing you of the pendency of this litigation and the settlement described herein so that you can make appropriate decisions as to what steps you may wish to take . . . . at 371.

This comment by the Court cleanses the notice of any lingering prejudice inherent in its wording that cannot be removed.

Class Actions For Damages, 71 Col.L. Rev. 971 at 991–2 (1971). A further factor involved in the decision to proceed with the class action is the reasonableness of the compromise. But the Court is not presently faced with this question and the results of counter-defendants' offer are only speculative until the thirty day return period has elapsed when the Court will reconsider certification.[6]

Accordingly, it is this 14th day of January, 1974, by the United States District Court for the District of Maryland, ORDERED:

(1) that the counter-defendants' motion for permission to send notice of the proposed settlement to all potential class members is granted;

(2) that the contents of the notice be the same as those set out in Appendix I;

(3) that the parties inform the Court thirty-five (35) days from the date of this Order of the names of potential class members who have accepted the offer and the names of those who have directly refused or failed to respond;

(4) that the counter-defendants bear the expense of mailing the notice, a copy of this Memorandum and Order and the position statements of both parties to the potential class members; and

(5) that any further communications (other than those permitted in the notice) from the named parties, their representatives or counsel to the potential class members is forbidden without the prior approval of this Court.

## APPENDIX I

### NOTICE OF OFFER OF SETTLEMENT

This notice is addressed to you as a participant in the American Finance System Incorporated Profit Sharing Retirement Trust (hereinafter referred to as the "Trust"), formerly known as the State Loan and Finance Corporation Profit Sharing and Retirement Trust, in which a vested interest is being held for distribution until your fiftieth birthday in accordance with the provisions of the Trust.

There is pending before this Court a civil action to determine whether you, as a member of a class of former employees, might be entitled to receive your share, with or without accrued interest prior to your fiftieth birthday.

The purpose of this notice is to convey to you an offer to pay your vested benefit now instead of when you reach age fifty. In exchange, you are to agree to give up any additional amounts which may or may not be payable.

The litigation came about in this way: When the Trust was first adopted it provided that a female employee who terminated employment would receive her vested benefit immediately. On the other hand, if a male employee terminated employment, he would not receive his vested benefit until age fifty. Following enactment of the Civil Rights Act of 1964 (which included a provision that there could be no employment discrimination because of sex) several male former employees questioned the legality of the Trust so far as it provided for different times of payment of vested benefits to male and female employees. These former employees filed a complaint with the Equal Employment Opportunity Commission. In 1969 the Commission found reasonable cause to believe that the Trust provision would violate that Act and proposed that immediate payment be made of the vested benefit to all terminated male employees. The Trust was amended, effective January 1, 1970, to provide that payment of

---

**6.** Although the Court grants permission to offer the potential class members a settlement as directed by this Memorandum and Order, the counter-defendants are free to continue the suit without proposing the compromise. If this approach is chosen, the Court will consider the question of certification before thirty days elapse once informed of that decision by the parties.

the vested benefits of all terminated employees, male and female, would be deferred until age fifty.

This amendment did not settle the existing complaints of male employees who had terminated their employment and who had not yet reached age fifty. It appeared to the Trustees that immediate payment of such benefits might conflict with the interests of the active employees as defined under the terms of the Trust. The Trust provides that a terminated employee will receive, as a guaranteed amount, his vested benefit. Such amounts are held by the Trustees and invested, and the income from these investments is distributed among the active participants. Thus, if payment of the vested benefits is made before the terminated employee reaches age fifty, future income from investments would be reduced to some degree and the active employees would receive less of an increase in their accounts. The accounts of active employees vary upwards or downwards depending on the fluctuation in the value of the entire Trust Fund, including the accounts of the terminated employees.

In order to receive an authoritative ruling on the conflict, the Trustees and American Finance System Incorporated filed the action for declaratory judgment with the United States District Court, asking the Court for guidance. In that action, certain former employees of American Finance were named as defendants, with the request that they be certified as class representatives of all former male employees who had terminated their employment with American Finance System Incorporated or its subsidiaries after July 2, 1965 (the effective date of the Civil Rights Act) and prior to January 1, 1970 (when the Trust was amended) but who had not received payment from the Trust because they had not reached age fifty.

Thereafter, several persons (hereinafter referred to as the representative parties) filed counter lawsuits against American Finance and the Trustees in which the representative parties alleged that the provisions of American Finance's trust agreement violated the prohibitions against discrimination based upon sex contained in Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. The representative parties filed their lawsuits as a class action on behalf of all persons including you whose vested share is being withheld. The representative parties allege that the provisions of American Finance's trust agreement discriminated against males on the basis of their sex because American Finance's trust agreement withheld payment of vested benefits to terminated male employees until they reached the age of fifty while allowing payment upon termination to female employees even though they had not reached the age of fifty. The representative parties further allege that an amendment to American Finance's trust agreement which became effective on January 1, 1970 violates Title VII and the Equal Pay Act. The amendment to the trust agreement provides that no employee regardless of sex can receive his or her vested share upon termination unless the employee has reached the age of fifty or is disabled. The representative parties assert that the agreement should have been amended to provide that both male and female employees receive their vested shares upon termination rather than wait until they reach the age of fifty.

The representative parties have requested that the Court order American Finance to pay all vested shares being withheld and pay interest at a rate of 6% on each share from July 2, 1965 or the date on which the employee terminated—whichever is later. The counterclaim also asked for attorney's fees and costs.

Subsequently, a revenue ruling was issued by the Internal Revenue Service of the U. S. Treasury Department relating to the deferment of vested benefits

which required an amendment to the Trust. The effect of that amendment will be to remove the conflict which prompted the action by American Finance and the Trustees. That ruling requires that if a tax-qualified profit sharing trust provides for the deferred payment of benefits vested upon termination of an employee prior to retirement, the Trust must "provide for adjustments in the accounts of all participants to reflect changes in the valuation of trust assets". Because of the ruling, an amendment must be made to the Trust sometime in 1974, and made effective as of January 1, 1974, in order to continue its tax-qualified status. The Court has been advised that the Trust will be so amended but that no decision as to the nature of the amendment has yet been made; that is, whether the Trust will be amended to provide for the immediate distribution of vested benefits to terminated employees or to continue to defer payment thereof.

The settlement offer is this:

The Trustees will make an immediate distribution to each former employee under age fifty of his or her guaranteed vested benefit regardless of the date employment was terminated. In return, each employee must execute the attached general release.

Your alternatives are:

(1) Accept the offer by executing the attached release. You will receive immediate payment of your vested benefit *without* interest.

(2) Reject the offer and notify either party of your rejection. Your claim for an order requiring distribution *with* interest will be litigated in this Court. If full or partial payment is ordered, you are advised that interest may or may not be awarded, depending upon all the circumstances.

This notice is not to be understood as an expression of any opinion by this Court as to the merits of any of the claims or defenses asserted by either side in this litigation or as to any amount that you may receive if you reject the offer, but is sent for the sole purpose of informing you of the pendency of this litigation and the settlement described herein so that you may make appropriate decisions as to what steps you may wish to take in relation thereto.

The Court will not predict when this litigation will be concluded. This case has not as yet been set for trial. Counsel for both parties have informed the Court that in the event of an adverse decision they may appeal to the United States Court of Appeals for the Fourth Circuit.

At the Court's request counsel for each party has submitted a "Position Paper" which sets forth his contentions. This will help you to judge the wisdom of accepting or rejecting the offer. Counsel for both parties have been instructed that during the pendency of this offer they are not to discuss this case orally or to submit any written response to any questions which you might have without prior approval of the Court. If you have any questions about this offer, please write either of the following attorneys, each of whom is available to you without cost:

*Counsel for the Representative Parties:*

Robert B. Fitzpatrick, Esquire
2019 R Street, N. W.
Washington, D. C. 20009

*Counsel for American Finance and Trustees:*

John A. Cardon, Esquire
Suite 812, 1200 – 18th Street, N. W.
Washington, D. C. 20036

If you wish to accept this offer, sign the attached release and mail it within thirty (30) days to the following address:

American Finance System Incorporated
1320 Fenwick Lane
Silver Spring, Maryland 20910.

A check in the amount of your vested benefit will be forwarded to you imme-

diately. If you decide not to accept the offer, please advise either Mr. Fitzpatrick or Mr. Cardon (whose addresses are listed above) of that decision. You must take action with respect to this matter by February 18, 1974. If you have not indicated either an acceptance or a rejection of the offer by that date, the Court will assume that you wish the action to proceed toward an adjudication of your rights under Title VII and the Equal Pay Act.

## APPENDIX II

POSITION PAPER OF AMERICAN FINANCE SYSTEM INCORPORATED, and AMERICAN FINANCE SYSTEM INCORPORATED PROFIT SHARING RETIREMENT TRUST, BY ITS TRUSTEES

The Company and the Trustees filed this action in the United States District Court for a judgment as to whether the Trustees should pay vested benefits to former male employees under 50 who terminated after the effective date of the Civil Rights Act (July 2, 1965) and before the date of the Trust amendment (January 1, 1970). The reason for this action was that the Trustees believed that there was a conflict between present employee participants in the Trust and former male employees whose payment had been deferred. The vested benefit payable to the former employee is a guaranteed amount and whether the value of the Trust assets goes up or down, the vested benefit is unchanged. On the other hand, that vested benefit is part of the Trust corpus and earnings thereon are credited to the benefit of the active participants. This created the conflict between present and former employees.

Now that conflict no longer exists. Effective January 1, 1974 your deferred vested benefits will no longer be guaranteed as to amount; under a recent Revenue Ruling they must become part of the Trust assets and subject to market fluctuations. The Trustees now offer simply to pay over all deferred amounts to all former employees, because they feel that virtually all employees would want their vested benefits now.

This has met resistance from the representative parties. They want the Trustees to pay interest on the deferred amounts; they also want attorneys' fees and costs. As you know, the Trust does not provide for the payment of interest and the Trustees will vigorously defend any such claim by those former employees who wish to reject this offer. As a matter of law, the Trustees firmly believe that they will be successful in defending any claim for interest because:

(1) The Trust does not provide for it.
(2) The statute does not provide for it.
(3) The Trustees have committed no act which would prompt an award of interest against them.
(4) The payment of a guaranteed amount is good and sufficient consideration for the payment of no interest.

With respect to point (4), it should be mentioned that the guaranteed amounts may exceed what their value would have been had they fluctuated with the changes in the market value of the Trust assets.

In addition, if attorneys' fees are allowed, they may be assessed against the company, the Trust or awarded from the fund being distributed.

In the event you reject this offer and pursue this litigation for interest, the Trustees will ask the Court to award to them attorney fees and costs to be paid or deducted from your vested benefit should your claim for interest be denied.

This case has been pending since June, 1971. Your acceptance of the offer would give you in hand your vested benefit and terminate your role in this litigation.

For those of you who wish to reject the offer, you will directly, or through a representative, be a part of the continuing litigation, and you will not, of course, receive an immediate payment of your vested benefit. In addition, finally, if your vested benefit does become part of the Trust corpus for purposes of determining your distributable share, there can be no guarantee that the value of the Trust assets will increase rather than decrease, nor can there be any assurance that you will be entitled to receive the guaranteed amount rather than a lesser sum.

## POSITION PAPER OF REPRESENTATIVE PARTIES TO FEMALE FORMER EMPLOYEES

American Finance has refused since the date on which you terminated your employment to pay your vested share of $_____ in its profit sharing retirement trust. As you may know, prior to January 1, 1970 American Finance paid the vested shares of female employees immediately upon termination; whereas it refused to pay the vested shares of male employees upon termination and required men to wait for payment until they reached the age of 50. In 1969, the Equal Employment Opportunity Commission found reasonable cause to believe that American Finance was violating the Civil Rights Act of 1964 which prohibits sex discrimination. American Finance then amended the profit sharing retirement trust to provide that women like yourself would be denied payment of your vested share upon termination. In other words American Finance decided that no one could receive their vested share until they reached the age of 50 or became disabled.

We, the representative parties, and our attorneys believe the amendment to be illegal and in violation of the Civil Rights Act of 1964 and the Equal Pay Act. We have filed a suit against American Finance in which we ask the Court to order American Finance to pay your vested share plus interest at a rate of 6% from the date on which you terminated employment.

Some time ago American Finance offered to settle the lawsuit if we would agree to forfeit your claim for interest. In other words American Finance offered to pay your $_____ vested share if we would agree to forfeit your claim at 6% interest from the date on which you terminated. We rejected the offer because we and our attorneys firmly believe that the Court is going to order American Finance to pay your vested share plus interest. We and our attorneys have every confidence that we will win the lawsuit and that the Court will order American Finance to pay interest on your vested share because: (1) The courts have ordered that interest be paid in other lawsuits under the Civil Rights Act; (2) American Finance has engaged in blatant discrimination on the basis of sex; (3) The Equal Employment Opportunity Commission has found reasonable cause to believe that American Finance has violated Title VII of the Civil Rights Act of 1964; and (4) Interest would be just compensation for the loss of the use of your vested share since the date on which you were lawfully entitled to it, that is, the date on which you terminated employment with American Finance.

We and our attorneys believe that we can obtain within the next six (6) months a court order which will order American Finance to distribute your vested share plus interest at a rate of 6%. We have already obtained a preliminary injunction against American Finance which prohibits it from demanding a release of the claim for interest of those persons who are now approaching the age of 50. Thus, if you are appoaching the age of 50, you are already guaranteed payment of your vested share and the right to continue to seek interest in the lawsuit.

The Internal Revenue Service (IRS) has recently ruled that American Fi-

nance's profit sharing retirement trust is not a qualified plan unless American Finance allows you to share in the monies earned by investment of your vested share. Thus, American Finance will be required in the future to allow you to share in the monies earned by investment thereof. We do not believe that your vested share will be decreased as a result of the IRS ruling. Moreover, in the event earnings on investment should decrease, we and our attorneys do not believe that American Finance can legally decrease your vested share. Your vested share was in an amount certain at the time you terminated employment with American Finance. In our opinion you should have received your vested share in that fixed amount at the time you terminated employment with American Finance. In our opinion American Finance cannot now or hereafter decrease that amount of your vested share as in our opinion you had a clear right to that fixed amount since the date on which you terminated. We and our attorneys will take all steps necessary to prevent American Finance from ever decreasing your vested share.

We have asked the Court to order American Finance to pay the fees of our attorneys and we have every confidence that the Court will do so. If attorneys' fees are awarded it is our belief that fees will not be paid out of your vested share or your interest money. An award of fees to our lawyers will not decrease the amount of money you receive.

If you agree with us and reject the offer, you need do absolutely nothing. We and our lawyers will continue to vigorously prosecute the lawsuit against American Finance.

If you have questions about this matter, you may write our principal attorney who is:

Robert B. Fitzpatrick
2019 R St., N.W.
Washington, D. C. 20009

You will be charged no fee whatsoever for writing him for further advice or information about this matter. If you wish to consult with your own attorney, please do so.

### POSITION PAPER
### OF
### REPRESENTATIVE PARTIES TO MALE FORMER EMPLOYEES

American Finance has refused because of your sex since the date on which you terminated your employment to pay your vested share of $_____ in its profit sharing retirement trust. Several years ago the Equal Employment Opportunity Commission found reasonable cause to believe that American Finance's refusal to pay your vested share violates Title VII of the Civil Rights Act of 1964 which prohibits sex discrimination. We, the representative parties, have filed suit against American Finance in which we ask the Court to order American Finance to pay your vested share plus interest at a rate of 6% from the date on which you terminated your employment with American Finance or July 2, 1965 (the effective date of the Civil Rights Act which prohibits sex discrimination), whichever date is later in time.

Some time ago American Finance offered to settle the lawsuit if we would agree to forfeit your claim for interest. In other words, American Finance offered to pay your $_____ vested share if we would agree to forfeit your claim for interest at a rate of 6% from the date on which you terminated your employment with American Finance or July 2, 1965, whichever is later in time. We rejected the offer because we and our attorneys firmly believe that the Court is going to order American Finance to pay your vested share plus interest. We and our attorneys have every confidence that we will win the lawsuit and that the Court will order American Finance to pay interest on your vested share because: (1) the courts have ordered that interest be paid in other lawsuits under the Civil Rights Act; (2) American Finance has en-

gaged in blatant discrimination on the basis of sex; (3) the Equal Employment Opportunity Commission has found reasonable cause to believe that American Finance has violated Title VII of the Civil Rights Act of 1964; and (4) interest would be just compensation for the loss of the use of your vested share since the date on which you were lawfully entitled to it, that is, the date on which you terminated employment with American Finance or July 2, 1965 (the effective date of Title VII of the Civil Rights Act of 1964)—whichever is later in time.

We and our attorneys believe that we can obtain within the next six (6) months a court order which will order American Finance to distribute your vested share plus interest at a rate of 6%. We have already obtained a preliminary injunction against American Finance which prohibits it from demanding a release of the claim for interest of those persons who are now approaching the age of 50. Thus, if you are approaching the age of 50, you are already guaranteed payment of your vested share and the right to continue to seek interest in the lawsuit.

The Internal Revenue Service (IRS) has recently ruled that American Finance's profit sharing retirement trust is not a qualified plan unless American Finance allows you to share in the monies earned by investment of your vested share. Thus, American Finance will be required in the future to allow you to share in the monies earned by investment thereof. We do not believe that your vested share will be or legally can be decreased as a result of the IRS ruling. Moreover, in the event earnings on investments should decrease, we and our attorneys do not believe that American Finance can decrease your vested share. Your vested share was in an amount certain at the time you terminated employment with American Finance. In our opinion you should have received your vested share in that fixed amount at the time you terminated or July 2, 1965—whichever is later. In our opinion American Finance cannot now or hereafter decrease the amount of your vested share as in our opinion you had a clear right to that fixed amount since the date on which you terminated or July 2, 1965—whichever is later. We and our attorneys will take all steps necessary to prevent American Finance from ever decreasing your vested share.

We have asked the Court to order American Finance to pay the fees of our attorneys and we have every confidence that the Court will do so. We also have every confidence that if attorneys' fees are awarded, the fees will not be paid out of your vested share or your interest money. In other words, it is our belief that an award of fees to our lawyers will not decrease the amount of money you receive.

If you agree with us and reject the offer, you need do absolutely nothing. We and our lawyers will continue to vigorously prosecute the lawsuit against American Finance.

If you have any questions about this matter, you may write our principal attorney who is:

Robert B. Fitzpatrick
2019 R St., N.W.
Washington, D. C. 20009

You will be charged no fee whatsoever for writing him for further advice or information about this matter. If you wish to consult with your own attorney, please do so.

### APPENDIX III

Dear Sir or Madam:

In connection with the proceedings of the above-captioned case, I am enclosing for your consideration the following papers:

(1) Notice of Offer of Settlement.

(2) Memorandum and Order.

(3) Position Paper of American Finance System Incorporated, and American Finance System Incorpo-

rated Profit Sharing Retirement Trust, by its Trustees.

(4) Statement of Position of the Representative Parties to Male Former Employees.

(5) Statement of Position of the Representative Parties to Female Former Employees.

(6) A Release.

(7) An addressed, stamped envelope for your reply.

> Herbert F. Murray
> s/ Herbert F. Murray
> United States District Judge