## Floyd v. Philadelphia (No. 1)

*D. C. Harrison, Myron H. Deutsch* and *Gerald F. Tietz,* for plaintiffs.

*Gayle R. Smith, Thomas J. Ziomek, Edward W. Madeira, Jr., Irwin A. Popowsky, Mark A. Welge, Timothy J. Mahoney, Barton L. Post, Joseph V. Pinto* and *L. Carter Anderson,* for defendants.

SMITH, *J.*, April 24, 1978—These are class actions instituted under the Pa.R.C.P. 1701-1716, which became effective September 1, 1977. The event generating the litigation occurred September 30, 1977, a leak of chlorine gas from a water treatment facility of defendant, City of Philadelphia. Plaintiffs in each action, alleging themselves to have suffered injury by inhalation of the escaping gas, brought these actions on behalf of all persons so injured.

The actions have not yet been certified by the court as class actions pursuant to Pa.R.C.P. 1710.

Pleadings are closed, a motion for certification under Pa.R.C.P. 1707(a) has been filed, and discovery with respect to class action issues is proceeding pursuant to Pa.R.C.P. 1707(b). Nevertheless, the actions unquestionably are presently class actions since Pa.R.C.P. 1701(a) provides that any action so denominating itself is a class action until certification is refused by the court, or, if accorded, is later revoked.

Presently sought by parties on each side, plaintiffs and one (Diamond Shamrock Co.) of a number of additional defendants, are two non-communication orders. Rules to show cause have been issued, and opportunity provided for full argument, oral and written, on these requests. Plaintiffs' request is for a broad prohibition on any communications between named parties or their counsel and unnamed members of the asserted class. Plaintiffs' frankly stated purpose is "preventing imminent settlements in this case," and from copies of correspondence with claimants initiated by the defendant city, as exhibited to the court at argument, it clearly appears the city is engaging in ongoing negotiations to settle with uncounselled claimants, potential class members.

Plaintiffs' request goes beyond simple restraint on initiation of proposals to settle; it would require the city (a) to hold in a separate file and process no further any releases already received, (b) issue no checks in payment of the settlements embodied in such releases, (c) stop payment on any checks already issued but not yet paid. Plaintiffs express two concerns relative to compromise settlements (1) their fairness with uncounselled and perhaps unsophisticated claimants, (2) erosion or destruction of numerosity of the class, potentially threatening

certification of the class character of the action pursuant to Pa.R.C.P. 1710.

The non-communication order sought by additional defendant, Diamond Shamrock Company, would forbid any communication by a named party or counsel with any class member unnamed in the action, except with approval by the court of the specific communication and its addressees secured by prior motion and order. As proposed, specific prohibitions would be communications designed to solicit (a) legal representation of unnamed members, (b) fees and expenses or agreements to pay the same, (c) elections to opt out of the action pursuant to Pa.R.C.P. 1711(a), and (d) communications misrepresenting various aspects of the action itself and of orders of the court therein, which might convey adverse reflections on any party, any counsel, the court, or the administration of justice. Specifically excluded from the proposed prohibition would be (e) communications between attorney and client, or a prospective client who has taken the initiative to consult with or propose to employ an attorney, (f) communications in regular course of business or performance of duties of a public office or agency not offending the prohibition of (a) or (d) supra, and (g) communications protected by constitutional right, except to require within five days of the same, filing with the court of a copy thereof, if in writing, and an accurate and substantially complete summary thereof, if oral.

The orders sought by plaintiffs will be denied, and that sought by additional defendant granted as herein modified. In view of the dearth of Pennsylvania or other state authority bearing on the questions involved in grant or denial of the orders here

sought, the reasoning this court has found persuasive in reaching the conclusions here announced is predominantly that of United States courts, whose experience with class actions dwarfs that of state courts. Thus, it is said that the court has the inherent equitable power to supervise communications with class members: Vernon J. Rochler & Co., Inc. v. Minneapolis Shareholders Co., 425 F. Supp. 145 (D.C. Minn. 1977). Under what circumstances, the question remains, should this inherent power be exercised? Courts which have considered the point are in agreement that a total ban on communications with unnamed class members proposing compromise settlements of their claims would offend constitutional prohibitions: American Finance Systems v. Harlow, 65 F.R.D. 572, 575 (D.C. Md. 1974); Weight Watchers of Philadelphia v. Weight Watchers International, 455 F. 2d 770 (C.A. 2d 1972). The Fourteenth Amendment of the U.S. Constitution, forbidding state deprivation of property without due process of law, is directly applicable to judicial proceedings of the state: State v. Hedgebeth, 228 N.C. 259, 45 S.E. 2d 563 (1947), cert. dismissed, 334 U.S. 806, 68 S.Ct. 1185, 92 L.Ed. 1139 (1948); 16A C.J.S. 743, §611. The right to recover damages for personal injuries caused by the negligence of another is a property right within the protection of the Fourteenth Amendment: U.S.C.A. Title, Amend. 14, n. 480, and cases cited.

Further, settlement of claims is a course long favored by the law: Williams v. First National Bank of Paulo Valley, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910). Not only that, it is also a course which, by tending to reduce the volume of litigation, promotes that one of the objectives of the class

action device, perhaps as well as the device itself. Hence, the Court of Appeals for the 2nd Circuit in Weight Watchers of Philadelphia, etc., supra, reasoned that an outright ban on all settlement negotiations "was in conflict . . . with elementary considerations of common sense."

Pre-certification negotiations for settlement in fact occurred, and reached the point of agreement for which the court's approval was asked, in Philadelphia Electric Co. v. Anaconda American Brass, 42 F.R.D. 324 (D.C. E.D. Pa.). The court did not question the right to settle as such, indeed, made suggestions for implementation of the settlement, but because of viewing them as attempting to compromise the claims of the class and because of the difficulties of giving notice to its not yet determined members, held approval of these settlements in abeyance pending determination of the class action questions.

Destruction of the numerosity of class members by individual settlements such as to threaten eventual favorable certification of the class action was considered insufficient ground for court interference with settlement negotiations in Weight Watchers of Philadelphia, supra, and Vernon J. Rochler, Inc. v. Minn. Shareholders, Inc., supra. The Minnesota District Court freely conceded that destruction of numerosity undoubtedly affected the rights of non-settling plaintiffs, but not improperly, so as to violate Fed. R.C.P. 23(e), violation of which occurred only when the settlements impinged on the substance of plaintiffs' own complaint. This untoward result, the court said, was not at all threatened by defendant's effort to diminish the population of the class.

The caution is uttered by one court that even if numerosity is destroyed by conciliation, on a showing that a denial of class action certification might preclude relief to an appreciable segment of the class beyond the named parties, the action may still be permitted to proceed as a class action: American Finance Systems v. Harlow, supra.

Finally, no assurance exists prior to certification that the number of unnamed class members exceeds the total said to indicate preferability of class action to ordinary joinder of plaintiffs, i.e., 30 to 40: Moscarelli v. Stamm, 288 F.Supp. 453, 463 (D.C. E.D. N.Y. 1968). This consideration deters the court from imposing a restraint on settlement negotiations which, on any evidence yet of record, might turn out to have been a restraint protective of a numerosity in any event insufficient. Granted, denial of the requested restraint may, on the other hand, insure destruction of an otherwise sufficient numerosity. This risk is unavoidable, on grounds of the strong policy of the law favoring amicable adjustment of disputes, of common sense, and of Constitutional rights. There is nothing in a person's happening to be one of many victims of a single tort that should of itself require him to await satisfaction for his loss until the claims of his fellow victims are determined. Even after certification, he is free to elect to be excluded, that is, opt out: Pa.R.C.P. 1711(a).

In an earlier version of plaintiffs' request, a partial, less than absolute, restraint on settlement negotiations was proposed. This was that settlements with unnamed class members be forbidden unless those claimants were represented by counsel. The court knows of no authority under which it

may require any litigant, actual or potential, to employ counsel, whether of his own choice or the counsel for named plaintiffs in a class action. Such a requirement offends the due process strictures of the Fourteenth Amendment as much as an outright ban of all negotiations. As for requiring any release to be submitted for court approval, no legal authority exists under which the court may undertake to supervise settlements of unnamed individual class members: Nesenoff v. Muten, 67 F.R.D. 500 (D.C. E.D. N.Y. 1974). Court approval of settlement of claims of minors or other litigants under disability is in the exercise of the state's character of parens patriae. There is no such interest of the state at stake here.

Though authorities may be found imposing a limited restraint on pre-certification settlements with individual class members: American Finance Systems, Inc. v. Harlow, supra, and Weight Watchers of Philadelphia, supra; the factual context of those decisions, on examination, appears so distinguishable from the instant case as to render them unpersuasive. In American Finance Systems, the rights of a considerable number of retired employes turned upon construction of the Civil Rights Act of 1964, the Equal Pay Act and the profit sharing retirement trust agreement itself. On this factual and legal commonalty of right, the District Court of Maryland was moved to find in its own Local Rule 20, forbidding solicitation by formal parties to elections to opt out and in Fed.R.C.P. 23(e), controlling settlement of class actions, a policy justifying its being applied to pre-certification offers to settle. The factual circumstances of those injured in a multi-victim tort differ sharply from the common-

alty of right of the retirees in the Maryland case. Otherwise, the reasoning of the opinion appears at variance with the trend of authorities above referred to.

Similarly, in Weight Watchers of Philadelphia, supra, the factual framework of the question of restraint on communications with unnamed class members was renegotiation of a number of contracts held in common by plaintiff franchisees with defendant franchisor. An earlier absolute restraint on defendant's correspondence with the class members was modified to permit discussion of the subject matter of the action (uniform price fixing) in connection with contract negotiations requested by a franchisee, conditioned on the presence of his own counsel and limited participation by plaintiffs' counsel in the negotiations. The opinion of the court appears to take for granted that each franchisee had already employed counsel, a not unreasonable assumption under circumstances of negotiation of involved contractual undertakings. Such conditions imposed on negotiation of contractual provisions suggesting considerable likelihood they would eventually be those governing all members of the asserted class of franchisees can perhaps be justified. The common interest of such a class in working out an eventual agreement is not that held by victims of a common accident.

For all these reasons, the non-communication order requested by plaintiffs will not be granted.

Less extended consideration is required by the non-communication order requested by additional defendant. The proposed order, if unmodified, would be in conflict with the court's refusal of what plaintiff has requested and with much of the rea-

soning above set forth. Accordingly, additional defendant's proposed order is granted in the modified form heretofore appended.

## ORDER

And now, April 24, 1978, the rule issued March 23, 1978, to show cause why a non-communication order as requested by plaintiffs should not be granted is discharged.

The rule issued March 23, 1978, to show cause why a non-communication order as requested by additional defendant, Diamond Shamrock Co., is made absolute, to the following extent only:

All parties to these actions and their counsel are hereby forbidden to communicate, orally or in writing, with any member of the asserted class not named as a formal party to these actions, in any of the following respects:

(a) Soliciting, directly or indirectly, legal representation of them in these actions.

(b) Soliciting, directly or indirectly, their payment of or agreement to pay fees and expenses in these actions.

(c) Soliciting, directly or indirectly, their election to opt out of the class, pursuant to Pa.R.C.P. 1711(a).

(d) Misrepresenting the status, purpose and effects of these actions, and of actual or potential court orders therein.

(e) Reflecting adversely on any party, any counsel, the court, or the administration of justice.

Expressly not forbidden hereby are communications, oral or written,

(f) Between an attorney and a prospective client who has initiated consultation with or has proposed to employ the attorney.

(g) Occurring in the regular course of business or in performance of the duties of a public office or agency, which do not offend sub-paragraphs (a) through (e) of this order.

(h) Protected by Constitutional guarantees of free speech and of non-deprivation of property without due process of law.