Charles **H.** BOLES et al., Plaintiffs,

v.

**UNION CAMP CORPORATION,** Savannah, Georgia, et al., Defendants.

Civ. A. No. 2804.

United States District Court,
S. D. Georgia,
Savannah Division.

Nov. 10, 1972.

---

Fletcher Farrington, Hill, Jones & Farrington, Savannah, Ga., for plaintiffs.

Robert M. Williams, Bouhan, Williams & Levy, Savannah, Ga., for defendants.

## ORDER ON MOTION OF UNION CAMP CORPORATION TO DISMISS

LAWRENCE, Chief Judge.

This class action is brought by several Negro employees of Union Camp Corporation and by two former black employees and two blacks who are rejected applicants for employment. Various local unions and internationals are named defendants along with Union Camp. Plaintiffs bring the complaint under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981. They seek injunctive, declaratory and affirmative relief, including back pay, because of racial discrimination in the employment practices of Union Camp. Discriminatory acts by the unions are alleged as well as unfair representation by them of black employees.

The complaint which was filed in May, 1971, alleges that Union Camp maintains a racially segregated dual system of jobs and departments; that whites are preferred for the better paying jobs; that blacks who seek to be considered for jobs traditionally held by white employees are subject to discriminatory testing requirements and screening devices; that they are given less opportunity for training for higher paying jobs, and that in transferring to a new line of progression blacks do so without receiving credit for seniority previously earned. The complaint also charges discrimination in the degree of work experience required of blacks in hiring; in allocation of overtime work; in nonemployment of Negroes in supervisory positions, and by according preference to white applicants in recruiting and hiring practices.

It is alleged that the international and local unions which have been sued along with Union Camp entered into collective bargaining agreements with the Company that contain provisions perpetuating discriminatory acts and practices.

On January 29, 1969, the plaintiffs submitted a complaint to the Equal Employment Opportunity Commission in which fourteen charges of racial discrimination were made against Union Camp, United Papermakers and Paperworkers (Local 407), International Brotherhood of Pulp, Sulfite and Paper Mill Workers (Locals 388 and 435) and the Internationals. Apparently EEOC conducted no investigation. It issued a right-to-sue letter on April 14, 1971. The instant class action was filed by the grievants three weeks later.

The same plaintiffs filed similar charges of discrimination against Union Camp Corporation with the Office of Federal Contract Compliance (OFCC), Office of the Secretary of Labor.[1] That

---

1. 3 CFR 339 (1965). Section 202 provides that all Government contracts shall contain a clause assuring non-discrimination. "The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race. . . ." For a history of Executive Order 11246 see, James R. Beaird, "Racial Discrimination in Em-

agency has responsibility for overseeing compliance with Executive Order 11246 requiring assurance of non-discrimination by employers who contract with the federal government. Subsequently an investigation of the complaint and review of Union Camp's operations was undertaken by OFCC and the Defense Supply Agency. Nine of the Fourteen charges were sustained.

Extended negotiations followed between the Company and OFCC. Effective July 23, 1970, an Affirmative Action Program was agreed to by Union Camp and was approved by OFCC. According to the affidavit of E. J. Bartlett, Manager of Industrial and Public Relations (which accompanied Union Camp's motion to dismiss), the Program has been implemented as a change of the collective bargaining agreements between it and the various Unions. It covers all aspects of recruitment, selection, hiring, transfer, training and working conditions of employees.

The Company claims that while its total work force fell from 4,980 to 4,663 employees between 1963 and 1971 the number of blacks employed by it rose from 758 to 956, an increase from 15.2% to 20.5%. In July of 1972 the number of blacks numbered 22.6% of the force—a 49% increase over the 1963 figure. According to the affidavit, 65% of all black employees are now in lines of progression. Twenty-eight percent declined transfer. Union Camp claims that its work force is completely integrated both on the job and in the rest and recreation facilities.

The Office of Federal Contract Compliance and the Defense Supply Agency required the acceptance by Union Camp of provisions eliminating the traditional "job" seniority system and the substitution of "Division" or "mill-wide" seniority as was ordered in Crown Zellerbach Corporation v. Wirtz, 281 F.Supp. 337 (D.C., Dist. Columbia) and United States v. Local 189, United Papermakers and Paperworkers and Crown Zellerbach Corporation, 282 F.Supp. 39 (E.D., La.).[2] The Company has abolished its former "job" seniority system and has replaced it with "Division" seniority.

The Company characterizes its progress in rooting out racial discrimination as "a remarkable history of achievement made possible by a combination of management, the unions and the rank and file employees of the company working together under the guidance and supervision of the Office of Federal Contract Compliance." It has filed a motion to dismiss the complaint in respect to the prayer for injunctive relief and as to the class action and back pay features of the case. I treat Union Camp's motion to dismiss as one for summary judgment under Rule 56, pursuant to Rule 12(c).

Contending that private settlements, such as its Affirmative Action Program, are favored by the law and should be encouraged by the courts, Union Camp argues that active supervision by Compliance officers removes any necessity for judicial overseership since every claim of racial discrimination an injunction could cover has been eliminated under the Program. According to the Company, the results achieved by it are "markedly superior" to those the Court of Appeals for the Eighth Circuit found sufficient to obviate issuance of an in-

---

ployment: Rights and Remedies," 6 Georgia Law Review (1972), 469–473.

2. Affidavit of E. J. Bartlett, Tab P, D–1 and P–1. United States v. Local 189 and Crown Zellerbach, *supra*, was affirmed by the Fifth Circuit in 1969, 416 F.2d 980, cert. denied, 397 U.S. 919. Other cases to the effect that a "job" seniority system is unlawful under Title VII in the context of a historical pattern of ra-

cial job assignments include United States v. Jacksonville Terminal Company, 451 F.2d 418 (5th Cir.), cert. denied 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815; Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir.); United States v. Bethlehem Steel Corporation, 446 F.2d 652 (2nd Cir.); Long v. Georgia Kraft Company, 328 F.Supp. 681 (N.D., Ga.), reversed on other grounds, 450 F.2d 557.

junction in Parham v. Southwestern Bell Telephone Co., 433 F.2d 421.

 However, voluntary, good faith efforts by an employer to do away with its discriminatory racial practices in employment is not a defense, as a matter of law, to the obtaining of broader relief by employees who sue under Title VII as private plaintiffs. In Rowe v. General Motors Corporation, 457 F.2d 348 the Fifth Circuit ruled that remedial policies adopted by an employer to eliminate discriminative practices, no matter how enthusiastically they may be undertaken, is not a defense to such an action. A consent preliminary injunction obtained by the United States in an action against unions, which was made the order of the district court, does not bar further injunctive relief in a class action by private plaintiffs against the union defendants. See United States v. Operating Engineers, 4 FEP Cas. 1088 (N.D., Cal. July 18, 1972). The fact that a seniority system was approved by EEOC is not a defense to a Title VII action brought by the United States in which the Government seeks broader corrective measures than those approved or requested by EEOC and OFCC. Local 189, United Papermakers and Paperworkers and Crown Zellerbach Corporation v. United States, *supra*, 416 F.2d 980.[3]

 An affirmative action compliance agreement entered into by a Title VII defendant-employer and approved by the Office of Federal Contract Compliance pursuant to Executive Order 11246, is not a conclusive defense to an action filed under that Title by private plaintiffs.

 In all events, a motion for summary judgment represents an unsatisfactory vehicle for determining whether to grant injunctive or affirmative relief in a Title VII or a § 1981 case. The grant of an injunction requires the exercise of discretion by the trial judge and discretion is best nourished by a full diet of facts ingested at an evidentiary hearing. To warrant summary disposition there must not only be no genuine issue of fact but the slightest doubt in that respect necessitates denial of the motion. St. John v. New Amsterdam Casualty Company, 357 F.2d 327 (5 Cir.); Liberty Leasing Co., Inc. v. Hillsum Sales Corporation, 380 F.2d 1013 (5 Cir.); Gauck v. Meleski, 346 F.2d 433 (5 Cir.); Scott v. Great Atlantic & Pacific Tea Company, 338 F.2d 661 (5 Cir.); National Screen Service Corporation v. The Poster Exchange, Inc., 305 F.2d 647 (5 Cir.); R. C. Craig Limited v. Ships of the Sea, Incorporated, 345 F.Supp. 1066, 1069 (S.D., Ga.).

 Plaintiffs claim that the Affirmative Action Program is inadequate in a number of respects. The seniority aspects fail, they say, to correct the defects of past discrimination. Blacks who transfer to formerly white lines of progression enter at the bottom and must hold each job on a permanent basis before they can be promoted. The OFCC agreement does not cover bargaining agreements with a number of unions. There is lack of provision for informing black employees as to job vacancies and unvalidated testing and aptitude tests are employed.[4] Blacks are restricted to low paying jobs. There is racial discrimination in hiring. So contend the plaintiffs.

 Against this background of disputed fact and prevailing law the

---

3. While good faith reliance upon a formal ruling of EEOC is a defense to an action under 42 U.S.C. § 2000e–12(b), the federal courts have not been liberal in the application of administrative rulings as a bar to more complete relief. See, for example, Robinson v. Lorillard Corporation, *supra*, 444 F.2d 791, at 801.

4. The Act imposes upon employers an affirmative duty to devise and implement pertinent objective criteria for determining which employees available for promotion are qualified to fill particular vacancies. United States v. Jacksonville Terminal Co., 451 F.2d 418 at 453.

motion to dismiss must be denied in respect to equitable relief. This does not mean that plaintiffs will be entitled to an injunction. While settlement agreements with OFCC are not *per se* a bar to injunctions under Title VII, good faith compliance with an agreed and adequate plan eliminating discrimination in employment practices can be a factor in the grant or non-grant of equitable relief. Voluntary efforts by the employer may render an injunction unnecessary although it does not moot the litigation. See Parham v. Southwestern Bell Telephone Co., *supra*; McGriff v. A. O. Smith Corporation, 51 F.R.D. 479, 484–485. On the other hand, present good faith compliance is no defense to past discriminatory practices which result in present discrimination. United States v. St. Louis-San Francisco Railway Company, 464 F.2d 301, 307 (8th Cir.); United States v. Local 189 and Crown Zellerbach, *supra*, 416 F.2d 980, 994. In enacting the Civil Rights Act Congress had in mind the consequences of employment practices and not merely the motivation. Marquez v. Omaha District Sales Office Ford Division of Ford Motor Company, 440 F.2d 1157, 1161 (8th Cir.); Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. See also United States v. Local 189, United Papermakers and Paperworkers, *supra*, and United States v. Jacksonville Terminal Co., 451 F.2d 418, 443 (5th Cir.).

Union Camp's motion to dismiss is chiefly based on the theory that the suit does not meet the requirements of Rule 23(a) as to class actions and the claim that, because the litigation is predominantly one for money damages, it cannot be maintained as a class action under Rule 23(b)(2) which is limited to suits where the exclusive or predominant relief sought is of an equitable or declaratory nature. Subsequently, as noted above, on the basis of the affidavit of E. J. Bartlett, Manager of Industrial and Public Relations, Union Camp requested that its motion to dismiss be treated as one for summary judgment pursuant to Rule 12(c).

The briefs and oral argument of counsel for the defendant emphasize the point that summary treatment is required as to the prayer for injunctive relief in view of the employer's good faith and voluntary efforts to do away with all racially discriminative employment patterns and practices through the Affirmative Action Compliance Program approved by OFCC. The Company also insists that affirmative relief in the form of back pay is unwarranted in the light of its efforts and the results it has obtained in establishing equal employment opportunity.

▮▮▮ The Court of Appeals of the Fifth Circuit and other courts have upheld class actions under Rule 23(b)(2) as a means of challenging "across-the-board" discriminatory practices such as those alleged here. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir.); Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir.); Miller et al. v. International Paper Company et al., 408 F.2d 283 (5th Cir.); Oatis v. Crown Zellerbach Corporation et al., 398 F.2d 496 (5th Cir.); Carr v. Conoco Plastics, Inc., 295 F.Supp. 1281 (N.D., Miss.), adopted as opinion of Fifth Circuit, 423 F.2d 57; Tolbert v. Western Electric Co., 56 FRD 108, 1972 (N.D., Ga.). This Court is of the view and finds that plaintiffs are proper representatives of a class consisting of affected black employees and rejected applicants at the Company's Savannah plant for purposes of the injunctive and declaratory relief sought in this case.

▮▮▮ Certification of any class in respect to the $40,000,000 claim for back pay is a different matter. It seems premature to certify or define at this time any such class and to designate its representatives. In cases of intentional discriminatory employment practices the court "may enjoin the respondent" and

order affirmative relief "which may include reinstatement or hiring of employees, with or without back pay." 42 U.S.C.A. § 2000e–5. Back pay is "an integral part of the statutory equitable remedy" available under Title VII. Johnson v. Georgia Highway Express, Inc., *supra,* 417 F.2d 1122, at 1125. Allowance of back pay is generally in the discretion of the court. In at least one case a court has said that back pay is not in order as respects a class unless injunctive relief is granted. See Baham et al. v. Southern Bell Telephone and Telegraph Company, 55 F.R.D. 478 (W.D., La.).

Whether back pay can be recovered on behalf of members of a class, as distinguished from the individual plaintiffs is not at all clear. In the Northern District of Georgia such awards have been limited to the plaintiff and intervenors and have been denied to members of the class in Title VII actions. United States v. Georgia Power Co., 3 CCH EPD § 8318 at 7093–7094; Johnson v. Georgia Highway Express, 4 CCH EPD § 7753. See also Madlock v. Sardis Luggage Company, 302 F.Supp. 866 (N.D., Miss.). *Cf.,* Robinson v. Lorillard Corporation et al., 444 F.2d 791, 801–802 (4th Cir.).

After the evidentiary hearing on the injunctive phase of this litigation will be time enough to determine the class question in the matter of back pay. Union Camp concedes that summary judgment should not be awarded in the instance of the back pay claims of the individual plaintiffs who have the right to be heard *de novo.* 42 U.S.C. § 2000e–5(e); Jenkins v. United Gas Corporation, 400 F.2d 28, 32 (5th Cir.). These claims can be inquired into after the injunctive feature of the case is disposed of. They will be adjudicated prior to or at the same time the back pay claims of the class members (if entertained) are dealt with. Such is the course this Court proposes to pursue. See in this connection 3B Moore's Federal Practice § 23.45[1] at 23–707–708; Laffey v. Northwest Airlines, Inc., 321 F.Supp. 1041 (D.C., Dist. Columbia); Harvey v. International Harvester Co. 56 F.R.D. 47 (N.D., Cal.). Subject to the above comments, the motion to dismiss the class action is overruled.

The Company's motion for a more definite statement of the damages claimed by way of back pay and how they are arrived at is denied without prejudice to its right to obtain such information through discovery procedures.

There is also a motion by Union Camp that the plaintiffs be required to amend the complaint by setting forth the Title VII and the § 1981[5] claims in separate counts. The right to equitable relief and to back pay under the latter seems to be coextensive with the remedies provided by the former. Mizell v. North Broward Hospital District et al., 427 F.2d 468, 472 (5th Cir.); Williams v. Travenol Laboratories, Inc. et al., 344 F.Supp. 163 (N.D., Miss.). Whether the right to jury trial exists under § 1981 is unsettled. *Cf.* the respective holdings in Williams v. Travenol, *supra,* and Rogers v. Loether (7th Cir.). My present feeling is that litigants who are bound by the judgment of the court in the non-jury hearing as to injunctive relief under Title VII and on the back pay claims are not entitled to a jury trial in the § 1981 action on those issues. Other areas of possible similarity or dissimilarity between the statutory remedies in question relate to the applicable statute of limitations in respect to back pay[6] and the right to attorneys' fees under § 1981.

5. This section which was part of the Civil Rights Act of 1866 provides that "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . . "

6. As to the § 1981 limitations period see Boudreaux v. Baton Rouge Marine Contracting Company, 437 F.2d 1011 (5th Cir.); Lazard v. The Boeing Company, 322 F.Supp. 343 (D.C., La.); Utley v. Marks (C.A. No. 1581, S.D., Ga.), "Sup-

I realize that separation of the two statutory claims was, "in the interest of justice and proper pleading," ordered in Cofield v. Goldman, Sachs & Co., 5 ECH EPD § 8001 (S.D., N.Y.). See also Taylor v. Safeway Stores, Inc., 333 F.Supp. 83 (D.C., Colo.). However, I do not see where any advantage will be gained by requiring a separate count here. I think we can make out as matters stand. To grant the motion will only serve to prolong the ride this case began a year and a half ago on the procedural carrousel. The motion to require another count in the § 1981 action is denied.

plemental Order as to Statute of Limitations." I am informed that an appeal in a case from the Northern District of Georgia is pending in the Fifth Circuit involving the question of limitations as to back pay in a Title VII case brought prior to the Equal Employment Opportunity Act of 1972. That Act amended Sec. 706 (Title VII) of the Civil Rights Act of 1964 by providing that "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission."