Ward E. HARDY, on behalf of himself and persons similarly situated, Plaintiff,

v.

BUCYRUS–ERIE COMPANY, Defendant.

No. 74–C–203.

United States District Court, E. D. Wisconsin.

June 20, 1975.

Terrance L. Pitts, Milwaukee, Wis., for plaintiff.

Fred G. Groiss, Quarles & Brady, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

On May 22, 1974, plaintiff Ward E. Hardy commenced an action against Bucyrus-Erie Company on behalf of himself and all persons similarly situated alleging that the defendant company, together with United States Steel Workers of America, Local No. 1343 (hereinafter "Local 1343"), has engaged in racially discriminatory practices in violation of section 703, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 and section I of the Civil Rights Act of 1866, 42 U.S.C. § 1981. In particular, plaintiff charges that, by virtue of and pursuant to its collective bargaining agreement with Local 1343, the defendant company has established a promotional and seniority system whose design is to

preserve a policy of limiting the employment and promotional opportunity of black employees and black applicants. Additionally, he cites harassment, demotion, discriminatory testing and discriminatory exclusion from apprenticeship programs jointly operated and maintained by Local 1343 and the defendant company, in redress whereof he seeks injunctive relief and back pay.

Defendant has responded to plaintiff's complaint by the filing of a motion to dismiss the action pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, stating as grounds therefor plaintiff's failure to join parties in whose absence complete relief cannot be accorded. That motion, which has been fully briefed by the parties, constitutes the subject of disposition herein.

Plaintiff's complaint discloses that a charge of employment discrimination was filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") against the defendant Bucyrus-Erie Company on November 7, 1971. Thereafter, on December 9, 1971, the EEOC deferred plaintiff's charge to the appropriate state agency and did not assume jurisdiction until sometime after March 21, 1972. Plaintiff then received a "Notice of Right to Sue" from the Milwaukee District Office of the EEOC on February 28, 1974, after which he commenced this action.

■ Dismissal of an action for want of an indispensable party is authorized by Rule 19 of the Federal Rules of Civil Procedure. Under Rule 19 however, the term "indispensable" is conclusory in nature in the sense that it does not constitute the starting point of analysis. As explained by the Seventh Circuit Court of Appeals in *Le Beau v. Libby-Owens-Ford Company*, 484 F.2d 798, 800 (7th Cir., 1973), Rule 19 "mandates two separate but interrelated inquiries. First, is the absent party a person 'to be joined if feasible;' and, second, if not feasible should the court in equity and good conscience allow the action to proceed or treat the absent party as indispensable."

■ Rule 19(a), Fed.R.Civ.P. mandates joinder of any person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction if, in his absence, complete relief cannot be accorded among those who are already parties or if his nonjoinder would prejudice his interests or subject other parties in the action to a substantial risk of incurring inconsistent obligations. In the event such person cannot be made a party, however, Rule 19(b) authorizes the court to determine whether, in equity and good conscience, the action should proceed among the parties before it or should be dismissed, the absent party being *thus* regarded as indispensable. Among the factors to be considered by the court in determining the indispensability of a party and the concomitant propriety of dismissal are:

" . . . first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

■ As heretofore noted, the instant complaint charges that the defendant company, by virtue of its collective bargaining agreement with Local 1343, which agreement "governs and controls" "[a]ll matters regarding compensation, terms, conditions, promotions, demotions, suspensions and privileges of employment of the plaintiff and the class he represents," has pursued a course of racial discrimination against the named plaintiff and members of his class. Plaintiff's prayer for mandatory injunc-

tive relief seeks to correct defendant's allegedly discriminatory practices by requiring defendant to: (1) recruit, hire, assign, and promote black applicants and employees on the same basis as white applicants and employees; (2) adopt and implement qualification standards and procedures for hiring, assigning and promoting employees without the utilization of discriminatory tests and discriminatory educational requirements; (3) provide equal opportunities for training and advancement; (4) hire and promote sufficient blacks to overcome the present effects of past discrimination, and (5) provide monetary compensation to plaintiff and other black employees for the loss they allegedly sustained as a result of defendant's failure to promote and employ them on a basis equal to that upon which white persons are promoted and employed. Having considered plaintiff's prayer for relief in light of the fact that all matters of compensation, conditions of employment, training and promotion at the defendant company are governed by a contract between it and Local 1343, this Court is of the opinion that Local 1343 must be made a party to this action. The injunctive relief sought by plaintiff, in that it would revamp existing programs and practices contracted by the union, would certainly affect the interests of the union and would create a situation in which the defendant company's obligations under the collective bargaining agreement with the union might be substantially inconsistent with the obligations imposed upon it by the Court as a result of this lawsuit. As noted under similar circumstances in *Waters v. Wisconsin Steel Wks. of Int'l. Harvester Co.*, 301 F.Supp. 663, 666 (N. D.Ill., 1969), reversed on other grounds, 427 F.2d 476 (7th Cir., 1970):

> "In their claim under Title VII, the plaintiffs seek injunctive relief against both the Company and the Union to prohibit enforcement of existing seniority provisions in their collective bargaining agreement, to require publication by both defendants of job openings, to 'restructure' the existing seniority system established by their collective bargaining agreement, and to give the plaintiffs seniority over all other bricklayers hired since the date of the alleged acts of discrimination. Under such circumstances, . . . the Union . . . must be before the court. . . ."

*See also, Gilmore v. Kansas City Terminal Ry. Co.*, 509 F.2d 48, 52–53 (8th Cir., 1975). It therefore remains to determine what, if any, impediments exist to joinder of Local 1343 in this action.

■ Plaintiff's complaint alleges a cause of action under Title VII of the Civil Rights Act of 1964 as well as a cause of action uncer 42 U.S.C. § 1981. Defendant's motion to dismiss must therefore be decided as against each of plaintiff's stated causes of action. Section 706(e) of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e–5(f)(1), provides that if, after a charge of discrimination is filed, the EEOC is unable to achieve compliance with the Act, the person claiming to be aggrieved may, after a specified period of time, commence a civil action "against the respondent named in the charge." The phrase "against the respondent named in the charge," however, has been construed by most courts, including the Seventh Circuit Court of Appeals, to impose a jurisdictional limitation upon the district courts such that a Title VII action may not be commenced against any person who has not been the subject of a prior charge before the EEOC:

> "Previously in construing section 706(e) this court has held that: 'It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued. 42 U.S.C. § 2000e–5(e). *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir., 1969).
>
> "Other courts which have considered the question have also held that the 'charged party' language of section

706(e) prohibits Title VII suits in the district court against persons not previously charged before the EEOC. . . ." *Waters v. Wisconsin Steel Wks. of Internat'l, Harvester Co.,* 427 F.2d 476, 485 (7th Cir., 1970), cert. den. 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151.

*Accord: Le Beau v. Libby-Owens-Ford Co., supra* at 799; *Equal Emp. Op. Com'n v. Mac Millan Bloedel Containers, Inc.,* 503 F.2d 1086, 1092 (6th Cir., 1974); *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 423 (6th Cir., 1974). Moreover, the charging requirement is important in two respects:

" . . . First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law. . . ." *Bowe v. Colgate-Palmolive Company,* 416 F.2d 711, 719 (7th Cir., 1969).

The record herein discloses that no charge of discrimination against Local 1343 was ever filed by plaintiff with the EEOC. Even were the Court to afford plaintiff's charge before the EEOC the liberality suggested by *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir., 1970):

" . . . the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the ninety-day period, *facts* sufficient to trigger a Commission investigation,"

and its progeny,[1] the facts stated to the Commission were not sufficient to warrant a Commission investigation of discriminatory practices by the union. Despite the fact that the "Charge of Discrimination" form provided by the EEOC specifically asked, "Who discriminated against you? Give the name and address of the employer, *labor organization,* employment agency and/or apprenticeship committee. If more than one, list all," (emphasis added), plaintiff mentioned only the Bucyrus-Erie Company. Nor did he include within the description of the "unfair thing done to you" appended to the charge any factual allegation which even *alluded* to the unfair employment practices complained of against the union in the instant action. In fact, the only mention of any union involvement in the proceedings was plaintiff's single statement to the EEOC that, "I filed a grievance, but later withdrew it because of the harassment I experienced," which this Court deems wholly inadequate and which allegation of harassment the EEOC understandably attributed to the company. As indicated by the EEOC determination rendered on February 28, 1975, the issue raised by plaintiff's charge was whether the Bucyrus-Erie Company "discriminated against him with respect to job assignment and with respect to warnings, because of his race, Negro, and because he filed a charge of discrimination." It is evident from the EEOC determination that Local 1343 was never notified of or investigated for any violation of plaintiff's civil rights, nor has plaintiff made any showing that the union was otherwise aware of his allegations. *Cf. Thornton v. East Motor Freight, supra* at 423–424. The union was thus "denied the opportunity to participate in conciliation proceedings aimed at voluntary compliance under EEOC auspices." *Williams v. General Foods Corp.,* 492 F.2d 399, 405 (7th Cir., 1974). Having determined, therefore, that there exists a jurisdictional impediment to joinder of the union in plaintiff's cause of action under Title VII, the Court must next consider the propriety of dismissal of such cause of action.

In the opinion of this Court, each of the first three factors enumerated by Rule 19(b), Fed.R.Civ.P. is persuasive of a finding of indispensability of the union and dismissal of plaintiff's Title VII cause of action. Since plaintiff's charges against the defendant

1. See *Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829, 834–835 (N.D.Cal., 1973).

company attack the employment and promotional structures which are controlled by a labor contract with Local 1343, no relief could be framed which would not intimately affect the union and its membership. Thus, any judgment sustaining plaintiff's charges and granting such injunctive relief as prayed for herein would necessarily prejudice the union, and this Court is aware of no manner of protective order whereby such prejudice could be minimized. Furthermore, since the union would not be bound by any judgment of this Court if not joined as a party defendant in this action, *see Provident Bank v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967), its interests could not be conclusively litigated. In the event the now defendant company were ordered to implement procedures in conformity with the injunctive relief sought herein and in violation of its contractual obligations with the union, the company's inconsistent obligations created by virtue of the court order would be resolved only in subsequent litigation with the union. Thus, any judgment rendered herein would not be "adequate," as that term is employed by Rule 19(b):

"Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes, whenever possible . . ." *Id.*, 390 U.S. at 111, 88 S. Ct. at 739.

The Court is of a similar mind with regard to the existence of an adequate remedy to the plaintiff in the event his Title VII action is dismissed for nonjoinder in that such a remedy is available to plaintiff in the form of the § 1981 action commenced simultaneously herein. 42 U.S.C. § 1981 provides in part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

Commenting upon the relationship of Title VII and § 1981, the United States Supreme Court in its recent decision in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L. Ed.2d 295 (May 19, 1975) noted the independence and comparative breadth of § 1981:

"Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. . . . In particular, Congress noted 'that *the remedies available to the individual under Title VII are coextensive with the individual's* [*sic*] *right to sue under the provisions of the Civil Rights Act of 1866, 42 U. S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive.*' H.R.Rep.No.238, 92d Cong., 1st Sess., 19 (1971) . . . .

"Title 42 U.S.C. § 1981, being the present codification of § 1 of the century-old Civil Rights Act of 1866, 14 Stat. 27, on the other hand, on its face relates primarily to racial discrimination in the making and enforcement of contracts. Although this Court has not specifically so held, it is well-settled among the federal courts of appeals—and we now join them—that § 1981 affords a federal remedy against discrimination in private employment on the basis of race. *An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages. . . . And a backpay award under § 1981 is not restricted to the two years specified for*

*backpay recovery under Title VII."* (Emphasis added). 421 U.S. at 459, 95 S.Ct. at 1719, 44 L.Ed.2d 295.

*See also, Boles v. Union Camp Corp.,* 57 F.R.D. 46, 52 (S.D.Ga., 1972). It is thus clear that plaintiff would suffer no deprivation of adequate remedy by proceeding under § 1981 as opposed to Title VII.

A question arises, however, as to whether plaintiff's failure to charge Local 1343 before the EEOC and thus exhaust his EEOC remedies also precludes his maintenance of a § 1981 cause of action against the union. Adopting a minority position,[2] the Seventh Circuit Court of Appeals in *Waters v. Wisconsin Steel Wks., supra,* 427 F.2d at 487 ruled:

"Because of the strong emphasis which Congress placed upon conciliation, we do not think that aggrieved persons should be allowed intentionally to by-pass the Commission without good reason. We hold, therefore, that *an aggrieved person may sue directly under section 1981 if he pleads a reasonable excuse for his failure to exhaust EEOC remedies. . . .*"

(Emphasis added).

In a later opinion, however, the Seventh Circuit arguably retracted its decision that exhaustion of Title VII remedies or reasonable excuse for the failure to do so constituted a jurisdictional prerequisite to the maintenance of a cause of action under § 1981:

". . . The evidence adduced at trial supports plaintiffs' allegation that the collective bargaining agreement amendment occurred after the EEOC charge was filed thereby justifying the by-pass of the EEOC. Moreover, *we note and are somewhat inclined to agree with the recent decisions which hold that exhaustion of Title VII remedies, or reasonable excuse for failing to do so, is not a jurisdictional prerequisite to an action under section 1981. See, e. g., Long v.*

*Ford Motor Co.,* 496 F.2d 500 (6th Cir., 1974)." (Emphasis added). *Waters v. Wisconsin Steel Wks. of Int. Harvester Co.,* 502 F.2d 1309, 1315 (7th Cir., 1974).

This latter pronouncement, moreover, reflects the same position as that most recently adopted by the United States Supreme Court:

". . . [I]t has been noted that the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action. . . .

"We are satisfied, also, that *Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Commission's efforts to obtain voluntary compliance.* . . . Under some circumstances, the administrative route may be highly preferred over the litigatory; under others, the reverse may be true. We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a § 1981 action while an EEOC claim is pending." (Emphasis added). *Johnson v. Railway Express Agency, supra,* 421 U.S. at 460, 95 S.Ct. at 1720, 44 L. Ed.2d 295.

Premised upon that determination, the Supreme Court further ruled that commencement of Title VII proceedings by timely filing of a charge of employment discrimination with the EEOC would not toll the running of the period of limitation applicable to an action, based on the same facts, instituted under 42 U.S.C. § 1981. Commenting upon petitioner's argument that such a determination would force a plaintiff into premature and expensive litigation

---

2. See *Long v. Ford Motor Co.,* 496 F.2d 500, 503 (6th Cir., 1974).

which would destroy any chance for administrative conciliation, the Supreme Court noted:

". . . [I]t is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing a civil rights complainant who values his § 1981 claim into court before the EEOC has completed its administrative proceeding. One answer to this, . . . is that plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed. But the fundamental answer to petitioner's argument lies in the fact . . . that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time consuming procedures of Title VII. Petitioner freely concedes that he could have filed his § 1981 action *at any time after his cause of action accrued* . . ." (Emphasis added). *Id.* 465, 95 S.Ct. at 1722, 44 L. Ed.2d 295.

It is the opinion of this Court, in view of the above statements, that the maintenance of a § 1981 action is not dependent upon an exhaustion of Title VII remedies. This Court therefore declines to require such exhaustion or any statement of reasonable excuse by plaintiff in justification of his failure to file a charge against Local 1343 before the EEOC as a jurisdictional prerequisite to his maintenance of a cause of action under § 1981, thereby leaving the § 1981 action which has been commenced herein wholly viable. In any event, such reasonable excuse could certainly be found in the fact that plaintiff filed his charges before the EEOC as a layman without the assistance of legal counsel and without a view to what administrative procedures might be necessary to preserve his legal remedies. As noted by the Seventh Circuit in *Waters, supra,* 427 F.2d at 487:

"It is inconceivable that Congress would have intended to do away with the right to sue directly under section 1981 in these circumstances. To do so would bind complainants by the four corners of an informal charge and defeat the effective enforcement of the policies underlying Title VII. . . . At the administrative stage the charge is usually drafted by laymen untrained in the law. A requirement that the complainant charge every person who may be involved in the alleged acts of discrimination would be unnecessarily harsh. . . ."

Having thus determined that plaintiff possesses an equally effective remedy under 42 U.S.C. § 1981, this Court finds that Local 1343 is an indispensable party to the Title VII action, in whose absence a final determination would be inconsistent with equity and good conscience and in whose absence the action must be dismissed. However, although the presence of the union is equally important to the maintenance of plaintiff's § 1981 cause of action, dismissal of that action under Rule 19(b) need not be considered. Since no jurisdictional impediment exists with regard to joinder of the union as a party defendant to the § 1981 cause of action, the Court may simply order the union to be joined by virtue of Rule 19(a).

Now, therefore, it is ordered that defendant's motion to dismiss plaintiff's cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* be and hereby is granted.

It is further ordered that defendant's motion to dismiss plaintiff's cause of action under section I of the Civil Rights Act of 1866, 42 U.S.C. § 1981, be and hereby is denied and that plaintiff file within 20 days of the date of this order an amended complaint naming United States Steel Workers of America, Local No. 1343 a party defendant to said action.